[No. G039795. Fourth Dist., Div. Three. Oct. 28, 2008.]

GLOBALIST INTERNET TECHNOLOGIES, INC., Plaintiff and Appellant,
v.
ALBERT R. REDA et al., Defendants and Respondents.

**COUNSEL**

Hamburg, Karic, Edwards & Martin, Steven S. Karic and Fredric R. Brandfon for Plaintiff and Appellant.

Law Offices of Scott E. Schutzman, Scott E. Schutzman and Lee W. Chen for Defendants and Respondents.

**OPINION**

**O'LEARY, J.**—Code of Civil Procedure section 685.040,[1] provides that when a judgment awards attorney fees pursuant to a contract, the postjudgment attorney fees incurred by the judgment creditor in "enforcing" the judgment are included as recoverable costs. In this case, we are asked to consider whether attorney fees expended by a judgment creditor in successfully defending itself in a separate action filed against it by the judgment debtor, which had as its sole purpose the specific enforcement of an alleged agreement to settle the judgment debt at a substantial reduction, are attorney

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

fees expended by the judgment creditor in enforcing the judgment. We conclude they are, and reverse the trial court's postjudgment order taxing the judgment creditor's postjudgment costs.

## FACTS

### 1. *The Underlying Litigation and Judgment for Globalist*

In this case, *Globalist Internet Technologies, Inc. v. Iron Horse Holdings Inc.* (Super. Ct. Orange County, 2003, No. 01CC08369) (hereafter *Globalist v. Iron Horse*), Globalist Internet Technologies, Inc. (Globalist), successfully sued Albert R. Reda, Seamless Wi-Fi, Inc., a corporation formerly known as Internet Business's International, Inc. (and hereafter referred to as IBI), and Iron Horse Holdings, Inc. (Iron Horse), a company that held an ownership interest in IBI, for breach of contract and fraud arising out of the sale of two Internet Web sites by Globalist to IBI and Iron Horse. The final judgment, entered in July 2003, awarded Globalist compensatory damages of $136,799.86 against Reda, IBI, and Iron Horse jointly and severally, and punitive damages of $136,799.86 against Reda and IBI. The judgment awarded Globalist attorney fees of $88,972 as authorized by the contract.

On May 4, 2005, we filed our first opinion in this case reversing the award of punitive damages against Reda only, but otherwise affirming the judgment and awarding Globalist its costs on appeal. (*Globalist Internet Technologies, Inc. v. Iron Horse Holdings Inc.* (May 4, 2005, G032813) [nonpub. opn.] (hereafter *Globalist I*).)[2] Remittitur was issued on July 11, 2005. On March 30, 2006, the trial court amended the judgment in this case to include Globalist's attorney fees incurred on the appeal ($22,800), and its attorney fees incurred through January 19, 2006, to enforce the judgment ($59,162).

Also on May 4, 2005, we filed a second opinion affirming a judgment in favor of Soreena Salari (owner of Globalist) and his attorneys, in a separate malicious prosecution action filed against them by Reda (*Reda v. Salari, supra,* G033971), following a successful "anti-SLAPP" (strategic lawsuit against public participation) motion (hereafter the SLAPP suit). (§ 425.16.) We awarded Salari and his attorneys their costs and attorney fees on that appeal.[3]

---

[2] Globalist's unopposed request we take judicial notice of our opinions in *Globalist I, supra,* G032813, *Reda v. Salari* (May 4, 2005, G033971) (nonpub. opn.), and *Reda v. Globalist Internet Technologies, Inc.* (July 8, 2008, G039232) (nonpub. opn.) is granted. (Evid. Code, § 452, subd. (d).)

[3] Apparently there was another action filed by IBI against Salari and his attorneys, *Internet Business's International v. Salari* (Super. Ct. Orange County, 2005, No. 04CC07215). An

While this case and the SLAPP suit were pending in the trial court, Globalist filed a separate action in Los Angeles County Superior Court against some of Reda's business associates who were involved in the same business transactions underlying this case. (*Globalist Internet Technologies v. Wilson* (Super. Ct. L.A. County, 2005, No. BC317416); hereafter the Los Angeles action.)

## 2. *Settlement Negotiations*

While the first appeal in this case and the SLAPP suit appeal were pending in this court, the litigants were also engaged in a global mediation of the entire dispute before retired Judge William Sheffield. The mediation apparently was prompted by the filing of the Los Angeles action, but the parties included Reda and IBI, who were not parties to the Los Angeles action.

On February 7, 2005, a handwritten stipulation for settlement was signed by the parties to the mediation. Among the outlined terms were that Reda and IBI would pay Globalist $75,000, another individual defendant in the Los Angeles action would pay Globalist $25,000 and would assist in selling three properties owned by Iron Horse the proceeds from which would go to Globalist, and Globalist would release all of its claims against all of the parties. But negotiations over the terms of the final settlement and release agreement broke down and a final agreement was not executed.

## 3. *Reda and IBI's Litigation Efforts to Enforce Settlement*

Reda and IBI then undertook a series of litigation actions to enforce the February 7, 2005, handwritten stipulation against Globalist as concerned only themselves and the judgment in this case. On March 30, 2005, in the then still-pending first appeal in this case (*Globalist I*), Reda and IBI filed a motion in this court pursuant to section 664.6 to enforce the settlement. We declined to consider the motion concluding that because there was already a final judgment, the statutory procedure was likely not appropriate. We also concluded the enforceability of the handwritten stipulation involved evidentiary determinations best made by the trial court. (*Globalist I, supra*, No. G032813.)

After remittitur issued in *Globalist I*, Reda and IBI filed a motion in the trial court under section 664.6 to enforce settlement. In December 2005, the

appeal by IBI (case No. G034986) was dismissed without opinion by this court in 2005 due to IBI's failure to deposit costs for preparation of the record.

trial court denied that motion, ruling because there was a final judgment in this case, there was no "pending litigation" to settle pursuant to that statutory procedure.[4]

In January 2006, Reda and IBI filed a separate action against Globalist for breach of contract seeking specific performance of the February 7, 2005, handwritten stipulation as to them. (*Reda v. Globalist Internet Technologies, Inc.* (Super. Ct. Orange County, 2007, No. 06CC02588) (hereafter *Reda v. Globalist*).) In the *Reda v. Globalist* complaint, Reda and IBI alleged the February 7, 2005, handwritten stipulation constituted a settlement of this case (i.e., *Globalist v. Iron Horse, supra*, No. 01CC08369) as to them.

Reda, IBI and Globalist stipulated to submit *Reda v. Globalist* to binding arbitration before Judge Sheffield. In a written arbitration award signed on April 17, 2007, Judge Sheffield ruled the February 7, 2005, handwritten stipulation was not an enforceable settlement agreement. Not only had Reda and IBI repudiated the terms of the stipulation when they subsequently lowered their settlement offer from $75,000 to $20,000, but Globalist would not be able to receive the full benefits of the agreement because as it turned out the Iron Horse properties (that were to be sold for Globalist's benefit) were too heavily encumbered—a fact that apparently had not been disclosed to Globalist during negotiations. The arbitrator awarded Globalist costs ($7,468.65), but the award made no mention of Globalist's attorney fees (which had not been requested by Globalist in the arbitration).

The trial court denied Reda and IBI's subsequent motion to vacate the arbitrator's award and granted Globalist's petition to confirm the award. On July 12, 2007, a judgment was entered in Globalist's favor in *Reda v. Globalist, supra*, No. 06CC02588. Reda and IBI appealed, and we affirmed the judgment. (*Reda v. Globalist Internet Technologies, Inc., supra*, G039232.)

4. *The Order on Appeal*

On September 18, 2007, Globalist filed a memorandum of costs in the trial court in this case (i.e., *Globalist v. Iron Horse, supra*, No. 01CC08369). It claimed an additional $134,032.67 in attorney fees pursuant to section 685.040, which it asserted were incurred in enforcing the judgment since January 19, 2006. Included in its cost bill was $107,561 in attorney fees

---

[4] Section 664.6 provides, "If parties to *pending litigation* stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Italics added.)

incurred by Globalist in defending itself in *Reda v. Globalist, supra,* No. 06CC02588. The other attorney fees related to Globalist's efforts at registering the judgment in another state and its continued attempts to locate Reda's and IBI's assets.

Reda and IBI filed a motion to tax all of Globalist's additional attorney fees. The trial court denied Globalist's request for attorney fees incurred in defending *Reda v. Globalist, supra,* No. 06CC02588, but allowed the other attorney fees Globalist sought. The trial court concluded attorney fees incurred in defending *Reda v. Globalist, supra,* No. 06CC02588, were not attorney fees "incurred in 'enforcing' the judgment[]" in *this* case, *Globalist v. Iron Horse, supra,* No. 01CC08369. In its minute order, the court noted that even though the alleged settlement encompassed *this* action, it "arose out of a separate action filed by [Globalist]," and Reda and IBI were attempting to enforce a settlement reached in the other action. The court concluded attorney fees Globalist incurred in defending Reda and IBI's separate specific performance action were not incurred in enforcing the judgment in this action and could not be recovered in this case.

## DISCUSSION

Globalist contends the trial court erred by denying its claim for attorney fees incurred defending itself in *Reda v. Globalist, supra,* No. 06CC02588. We agree.

The usual standard of review for an award of attorney fees is abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].) But whether the trial court had the authority to award attorney fees is a legal issue which we review de novo.[5] (37 Cal.4th at p. 1175.)

Section 685.040 provides that when a judgment includes an award of attorney fees pursuant to a contract, then "[a]ttorney's fees incurred in enforcing [the] judgment are included as costs collectible . . . ."[6] An award of such postjudgment attorney fees under section 685.040 is not, however, based

---

[5] An order denying a postjudgment motion for an award of attorney fees and expenses incurred in enforcing a judgment is appealable. (§ 904.1, subd. (a)(2); *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 648, 656 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

[6] Section 685.040 reads in full: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of [s]ection 1033.5."

on the contract. As explained in *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770 [31 Cal.Rptr.2d 224], "When a party recovers a judgment for breach of contract, entry of the judgment absolves the defendant of any further contractual obligations, and the judgment for damages replaces the defendant's duty to perform the contract. [Citation.] Upon entry of judgment, all further contractual rights are extinguished, and the plaintiff's rights are thereafter governed by the rights on the judgment, not by any rights which might have been held to have arisen from the contract. [Citation.]"

Postjudgment attorney fees are recoverable costs under section 685.040 if the fees were "incurred in enforcing a judgment" that contained an award of attorney fees pursuant to a contract. A judgment creditor may claim such costs via a memorandum of costs filed before the judgment has been "fully satisfied but not later than two years after the costs have been incurred." (§ 685.070, subds. (a)(6), (b).) The requisites were met here. The judgment in this case contained an award of contract attorney fees. Globalist incurred attorney fees in enforcing the judgment by defending the judgment from attack against its enforcement in the companion case of *Reda v. Globalist, supra*, No. 06CC02588. And Globalist's memorandum of costs was timely filed.

The trial court's conclusion that Globalist could not obtain attorney fees in this case for defending *Reda v. Globalist, supra*, No. 06CC02588, was incorrect. To the extent the court concluded *Reda v. Globalist, supra*, No. 06CC02588, was filed to enforce the alleged settlement of a *different* action (i.e., the Los Angeles action) it was factually incorrect. Reda and IBI were not parties to the Los Angeles action. Although the mediation arose in the context of the Los Angeles action, the proposed settlement was global, and would have encompassed the judgment in this case. Indeed, the complaint in *Reda v. Globalist, supra*, No. 06CC02588, specifically alleged only *this case* as being the subject of the alleged settlement—it made no mention of the Los Angeles action.

The trial court's conclusion the attorney fees could not be recovered because they were incurred in a different action than this action was also incorrect. The statute authorizes an award of "[a]ttorney's fees incurred in enforcing a judgment." Neither section 685.040, nor the Enforcement of Judgments Law of which it is a part, ascribe any special meaning to the word "enforcing." (See § 680.010 et seq.) The plain meaning of the word necessarily suggests "enforcing a judgment" would include defending the validity of the judgment against challenge in a separately filed attack. (See *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140] [plain meaning of words in statute disregarded only when meaning is " ' "repugnant" ' " to purpose of act or for some other compelling reason].) For example, in *Worth v. Superior Court* (1989) 207 Cal.App.3d 1150,

1154–1155 [255 Cal.Rptr. 304], the court concluded a statute authorizing the district attorney to "enforce" child support orders encompassed " 'reinforc[ing]' " or " 'urg[ing]' " the validity of such orders by opposing efforts by the payor to reduce or eliminate the payments.

■ Attorney fees incurred in one action may be considered necessary litigation costs in another. The recent decision in *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927 [82 Cal.Rptr.3d 423] (*Jaffe*), is on point. In *Jaffe*, a judgment against the judgment debtor that included an award of attorney fees was entered in 1996 in the underlying action. By 2003, the unpaid judgment exceeded $900,000, and the judgment creditor had endeavored to enforce his judgment to no avail. In 2004, the judgment debtor filed for bankruptcy listing the underlying judgment as her only debt to be discharged. Thereafter, the judgment creditor filed an adversary proceeding in the bankruptcy court and eventually succeeded in having the bankruptcy petition dismissed. (*Id.* at p. 931.) The judgment creditor then sought his attorney fees and costs related to litigating the bankruptcy proceeding in the underlying action pursuant to section 685.040 as being incurred to enforce the underlying judgment. The trial court denied the request reasoning that the bankruptcy proceeding was a separate proceeding, it did not involve directly defending the underlying judgment, and any award of attorney fees related to the bankruptcy proceeding should have been sought by the judgment creditor in the bankruptcy court.

The appellate court reversed the trial court's order agreeing with the judgment creditor "that pursuant to section 685.040 he [was] entitled to an award of attorney fees and costs for the efforts he expended in combating [the judgment debtor's] bankruptcy attempt." (*Jaffe, supra,* 165 Cal.App.4th at p. 934.) The court reasoned, "[the judgment creditor's] request for attorney fees and costs is based upon the actions he took in the bankruptcy proceedings. The determination of whether section 685.040 entitles [him] to attorney fees and costs incurred in the bankruptcy proceedings *is not dependent upon the forum in which the expenses were incurred.*" (*Jaffe, supra,* 165 Cal.App.4th at p. 936, fn. omitted, italics added.)

The judgment creditor in *Jaffe* met the requisites of section 685.040: (1) the underlying judgment awarded attorney fees and costs pursuant to a contract; and (2) the attorney fees were incurred to enforce that judgment. "[T]he entire purpose of [the judgment debtor's] bankruptcy filing, and her related appeals, was to avoid paying the judgment which [the judgment creditor] sought to enforce. [The judgment debtor] sought to sabotage [the judgment creditor's] collection efforts. [The judgment creditor] filed the adversary proceeding seeking a determination that [the judgment debtor] was not entitled to have her debts discharged in bankruptcy. Had [the judgment

debtor] been successful in the bankruptcy proceedings, the judgment in the superior court would have been extinguished and unenforceable by the bankruptcy court's discharge order. [Citation.] [The judgment creditor's] preventive measures were directly related to the continued enforceability of the superior court's [1996] judgment . . . . [His] actions in the bankruptcy proceedings were necessary in order to maintain, preserve, and protect the enforceability of the judgment. [The judgment creditor] successfully blocked [the judgment debtor's] efforts to have the debt discharged by the bankruptcy court and [he] protected the judgment. [The judgment creditor's] actions in the bankruptcy proceedings are enforcement proceedings pursuant to section 685.040." (*Jaffe, supra,* 165 Cal.App.4th at p. 938.) The court concluded that to deny the judgment creditor his attorney fees and costs incurred in the bankruptcy "would encourage judgment debtors to file bogus bankruptcy petitions and potentially escape paying for the attorney fees and costs incurred by the creditors in combating those petitions." (*Ibid.,* fn. omitted.)

As in *Jaffe,* Globalist's right to recover attorney fees does not depend on the nature of the action or the forum in which the expenses were incurred. The inquiry compelled by section 685.040 is whether the attorney fees were incurred "in enforcing a judgment" containing an award of contract attorney fees. They were. The sole purpose of the specific performance action filed by Reda and IBI was to significantly decrease their unsatisfied judgment debtor obligations in *this* action. By the time *Reda v. Globalist, supra,* No. 06CC02588, was filed, Reda and IBI owed Globalist over $444,600 (not including accrued interest) on this judgment. Their action sought specific performance of an alleged settlement of the judgment for $75,000 or about one-sixth of what was owed. Had Globalist not defended against the specific performance action, it would have lost substantial rights under the judgment in this case. Accordingly, the attorney fees it incurred in defense of the companion action were incurred in enforcing the judgment.

In their respondents' brief, Reda and IBI assert Globalist's appeal "border[s] on frivolous" because the "law is well settled" that Globalist's failure to specifically request attorney fees in the arbitration proceeding waives any claim it might have. Reda and IBI cite none of this "well[-]settled" law, and their brief contains no legal analysis of the contention. Accordingly, we need not consider the point. (See *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

We take no position on whether Globalist is entitled to all of the attorney fees incurred by Globalist in defending *Reda v. Globalist, supra,* No. 06CC02588. The trial court is in a better position to determine on remand if the attorney fees sought are reasonable. (See *Phelps v. Stostad* (1997) 16 Cal.4th 23, 33, fn. 7 [65 Cal.Rptr.2d 360, 939 P.2d 760].)

## DISPOSITION

The postjudgment order taxing costs is reversed insofar as it denies Globalist attorney fees incurred in defending *Reda v. Globalist, supra,* No. 06CC02588. In all other respects, the order is affirmed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Globalist is awarded its costs on appeal.

Sills, P. J., and Aronson, J., concurred.