[No. B217067. Second Dist., Div. Eight. Nov. 5, 2010.]

RONALD P. SLATES, APC, Plaintiff and Appellant, v.
ALEX GORABI et al., Defendants and Respondents.

COUNSEL

Ronald P. Slates, in pro. per.; and J. Steven Bingman for Plaintiff and Appellant.

Law Office of Jeanne Collachia and Jeanne Collachia for Defendants and Respondents.

OPINION

**RUBIN, Acting P. J.**—Ronald P. Slates, a professional corporation, appeals from the trial court's judgment denying him recovery of attorney fees from Alex Gorabi and Gorabi's business, Angelino Men's Wear, Inc., under Code of Civil Procedure section 685.040,[1] which permits a judgment creditor such as Slates to recover attorney fees incurred in enforcing a judgment. We affirm.

## FACTS AND PROCEEDINGS

In 2006, Sam Ghadrdan sued respondents Alex Gorabi and his business, Angelino Men's Wear, Inc. Respondents hired Attorney Ronald P. Slates to defend them against Ghadrdan's lawsuit. Five months later in September 2006, respondents discharged Slates. Following his discharge, Slates sued

---

[1] All statutory references are to the Code of Civil Procedure.

respondents for his unpaid legal fees. Ghadrdan filed a third party claim in Slates's lawsuit against respondents. In his third party claim, Ghadrdan asserted that a preliminary injunction issued in his favor in his pending lawsuit against respondents, which barred them from disposing of their assets, gave him priority over Slates to respondents' assets.

In December 2007, Slates and respondents entered into a stipulated judgment and stay of execution. Respondents thereafter defaulted, and in January 2008 the court entered judgment for Slates for more than $300,000. Six months later in July 2008, Ghadrdan obtained a judgment of almost $2.4 million against respondents, which our colleagues in Division Five affirmed on appeal in *Ghadrdan v. Gorabi* (2010) 182 Cal.App.4th 416 [105 Cal.Rptr.3d 338].

Slates and Ghadrdan, each with a judgment in hand, turned to litigating the priority of their right to recover their judgments from respondents' limited assets, which all parties agreed were inadequate to satisfy both judgments. Ghadrdan asserted Slates's stipulated judgment with respondents violated Ghadrdan's preliminary injunction restraining respondents from disposing of their assets because the judgment permitted Slates to record a deed of trust against respondents' only significant asset, a building on Olive Street in Los Angeles. After the hearing, the trial court found that Slates's stipulated judgment did not violate Ghadrdan's preliminary injunction and had priority over Ghadrdan's multimillion-dollar judgment.

In March 2009, Slates filed a memorandum of costs against respondents. Citing section 685.040, Slates sought $72,807.79 in postjudgment costs, consisting of $61,853.50 in attorney fees with the rest in statutory costs. Section 685.040 permits a judgment creditor, such as Slates, to recover attorney fees he incurs enforcing a judgment based on a contract if an attorney fee provision in the judgment relied on an attorney fee clause in the underlying contract. (See also §§ 685.070, subd. (a)(6), 1033.5, subd. (a)(10)(A).) Respondents filed a motion to tax costs. They asserted Slates was not entitled to recover his attorney fees from them because he incurred his fees not in enforcing his judgment against them, but in litigating his priority over Ghadrdan to respondents' assets. The trial court agreed and granted the motion to tax costs in its entirety.[2] Gorabi thereafter filed for individual bankruptcy, automatically staying these proceedings against him. Slates's appeal thus proceeds only against respondent Angelino Men's Wear, Inc.

---

[2] Respondents also moved to tax $9,514.94 of the $10,954.29 in nonattorney fee costs sought by Slates because Slates did not supply supporting documentation. Slates conceded respondents' point and withdrew his request for the costs respondents challenged. Respondents did not, however, move to tax $1,439.35 in statutory costs, and we therefore understand the court to have intended to award that unchallenged portion of Slates's request for costs.

## DISCUSSION

■ Slates asserts he incurred his postjudgment attorney fees "enforcing the judgment" he had obtained against respondents. According to him, section 685.040 entitles him to recover those fees. Section 685.040 states: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. . . . Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to [section 1033.5, subdivision (a)(10)(A)]." Section 1033.5 permits attorney fees "allowable as costs" when authorized by contract. (§ 1033.5, subd. (a)(10)(A).) The trial court's authority to award postjudgment fees is a legal question that we independently review. (*Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1273 [84 Cal.Rptr.3d 725] (*Globalist*); *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934 [82 Cal.Rptr.3d 423] (*Jaffe*).)

In support of section 685.040's application here, Slates cites *Globalist, supra,* 167 Cal.App.4th 1267. Globalist obtained a money judgment against Reda in Orange County Superior Court arising from a business transaction between them. (*Globalist, supra,* at p. 1270.) Reda appealed. While the appeal was pending, Globalist sued Reda's business associates in Los Angeles County Superior Court. (*Id.* at p. 1271.) While the Orange County appeal and Los Angeles lawsuit were pending, all parties entered into mediation striving for a global settlement. (*Ibid.*) Reda and Globalist reached a tentative handwritten settlement of the Orange County action, but could not agree on its final terms. (*Ibid.*) Undaunted, Reda sued to specifically enforce the handwritten agreement. If enforced, the agreement would have reduced to $75,000 the almost $500,000 that Reda owed to Globalist under the Orange County judgment. (*Id.* at pp. 1271, 1276.)

Reda's suit to specifically enforce the agreement failed, and the Orange County judgment was affirmed on appeal. (*Globalist, supra,* 167 Cal.App.4th at pp. 1271–1272.) Globalist then sought to recover in postjudgment proceedings in the Orange County action the attorney fees it had incurred in the specific enforcement action. Globalist asserted its fees were recoverable under section 685.040 because Globalist had incurred them "enforcing" the Orange County judgment in Reda's specific enforcement action. (*Globalist, supra,* at p. 1273.) The trial court denied Globalist its fees because the specific enforcement action was a separate lawsuit from the Orange County action; the trial court thus reasoned Globalist had not incurred its fees "enforcing" the Orange County judgment. (*Ibid.*)

On review, the appellate court reversed. (*Globalist, supra,* 167 Cal.App.4th at p. 1273.) The appellate court noted that Reda's "sole purpose" for suing for

specific performance to enforce the handwritten settlement was to reduce its liability under the Orange County judgment. (*Id.* at p. 1276.) To stop Reda's effort to reduce the amount Reda owed Globalist, Globalist was compelled to defend itself in the specific performance action. Holding that a judgment creditor may recover postjudgment attorney fees which it incurs defending its judgment against the judgment debtor's attack in a separate action, the appellate court awarded Globalist its postjudgment fees. (*Id.* at pp. 1269–1270.)

The trial court here found *Globalist* was distinguishable. The trial court was correct. Unlike *Globalist,* respondents here did not challenge Slates's judgment against them. Respondents were instead bystanders to the battle between Slates and Ghadrdan over who had priority to respondents' assets in satisfaction of Slates's and Ghadrdan's separate judgments against respondents. *Globalist* involved collateral litigation between the judgment creditor and judgment debtor; here, in contrast, the litigation for which Slates sought postjudgment fees was a dispute by one judgment creditor against another judgment creditor. (Accord, *Jaffe, supra,* 165 Cal.App.4th at p. 938 [award of postjudgment attorney fees incurred by judgment creditor who successfully sought dismissal of judgment debtor's bankruptcy petition which had been filed solely to escape judgment].)

Slates urges that we extend *Globalist* to include attacks on a judgment by third parties unrelated to the judgment debtor. We decline Slates's invitation. Section 685.040 ensures that a recalcitrant judgment debtor does not reduce a creditor's judgment to a hollow victory by forcing the creditor to eat up a judgment's value with attorney fees trying to enforce the judgment. Extending section 685.040 to permit recovery of fees from the debtor for acts by *third parties* over whom the debtor has no control will not advance that purpose. Indeed, Slates's proposal risks imposing open-ended liability on judgment debtors such as respondents for events, such as Ghadrdan's intervention against Slates, beyond the judgment debtor's control.

Moreover, a dispute over priority of judgments is not the same as enforcing those judgments. Priority of the judgments was at issue because respondents did not have sufficient assets to satisfy both judgments. Slates asserts he ought to be entitled to collect his fees because his priority dispute with Ghadrdan imperiled his "substantial rights" under his judgment. In support, he cites language from *Globalist* that affirmed the judgment creditor's need in that action to defend the judgment in the collateral specific performance action. The *Globalist* court noted that "[h]ad Globalist not defended against the specific performance action, it would have lost substantial rights under the judgment in this case. Accordingly, the attorney fees it incurred in defense of the companion action were incurred in enforcing the judgment." (*Globalist, supra,* 167 Cal.App.4th at p. 1276.)

■ We find the quoted language inapt. Respondents do not dispute Slates's rights within the four corners of his judgment. True, his judgment's monetary value, discounted for the risk that respondents might not be able to pay it, largely depends on its priority over Ghadrdan's judgment, but that uncertainty in the judgment's value—in *Globalist*'s parlance, his "substantial rights"—rests on the happenstance of respondents' wealth. Were respondents wealthier, with assets sufficient to satisfy both judgments, Slates's and Ghadrdan's battle over priority would have been unnecessary. It seems unlikely that the Legislature intended a section 685.040 postjudgment fee award to turn on whether the judgment debtor had sufficient assets to satisfy all judgments against him. More plausibly, the Legislature envisioned the propriety of an attorney fee award as turning on the judgment debtor's postjudgment conduct, with the Legislature intending that the judgment debtor's possible liability for postjudgment fees serve as encouragement for the debtor's cooperation in satisfying the judgment.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Flier, J., and Grimes, J., concurred.