Filed 11/12/21 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WERTHEIM, LLC,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>CURRENCY CORPORATION,<br><br>      Defendant and Appellant. | B304655<br><br>(Los Angeles County<br>Super. Ct. No. BC328263) |
| WERTHEIM, LLC,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>CURRENCY CORPORATION,<br><br>      Defendant and Respondent. | B310650<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 14, 2021, be modified as follows:

At the end of page 12 extending to page 13, the last sentence is modified to read:  "However, Wertheim also modified that form by interlineation, specifying that the acknowledgement applied only to a postjudgment interest payment made by Currency."

On page 16, the last sentence of the first paragraph is modified to read:  "Equity does not support an award of Wertheim's appellate attorney's fees."

On page 16, the first sentence of the third paragraph is modified to read:  "After the case was submitted, we requested supplemental briefing on whether in evaluating Wertheim's attorney fee requests we may consider equitable principles, given the disproportion of the fees requested and the original $190,718 judgment."

These modifications effect no change in the judgment. Appellants' petitions for rehearing are denied.

_____

CHANEY, J.      BENDIX, ACTING P. J.        CRANDALL, J.*

_____

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/14/21 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WERTHEIM, LLC, | B304655 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC328263) |
| v. | |
| CURRENCY CORPORATION, | |
| Defendant and Appellant. | |
| _____ | |
| WERTHEIM, LLC, | B310650 |
| Plaintiff and Appellant, | |
| v. | |
| CURRENCY CORPORATION, | |
| Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County. Edward B. Moreton, Jr., Judge, and Stuart M. Rice, Judge. Affirmed in part and reversed in part.

Shaw Koepke & Satter, Jens B. Koepke for Defendant and Appellant and for Defendant and Respondent.

The Law Offices of F. Jay Rahimi, F. Jay Rahimi; Matthew D. Kanin; Alvarado Smith, W. Michael Hensley for Plaintiff and Respondent and for Plaintiff and Appellant.

_____

We have before us in these consolidated appeals three attorneys' fees motions by a judgment creditor seeking over $800,000 for its efforts to enforce a 2009 judgment entered after a jury awarded it approximately $39,000. Even standing alone, these fee claims are striking in relation to the amount of the underlying judgment, but they also must be considered in light of the more than 40 appeals occasioned by the parties' competing businesses in the Second District's docket over the last dozen years.[1]

In the current litigation, the trial court awarded Wertheim LLC's attorney fees incurred in successfully appealing an order made during judgment enforcement proceedings years ago. Currency Corporation appeals that award, arguing the fees were unreasonable and unnecessary. Because Wertheim's litigation strategy has been unnecessary and objectively unreasonable, we reverse the order awarding its post-appeal attorneys' fees.

The trial court also denied two subsequent motions by Wertheim, the first of which involved postjudgment enforcement fees not encompassed within its earlier motion, and the second of

_____

[1] We take judicial notice of our docket. (Evid. Code, § 452, subd. (d).)

which sought attorneys' fees in connection with enforcement of an appeal bond.

The trial court concluded that the postjudgment enforcement fee motion was untimely, and that both motions sought fees that were unnecessarily incurred. We conclude that the motion for post-judgment enforcement fees was timely, but also hold that most of the fees sought in these two subsequent motions were not necessarily or reasonably incurred and, hence, unrecoverable. Accordingly, while affirming the trial court's denial of fees as to the appeal bond fee motion, we reverse, in part, its denial of fees as to postjudgment enforcement fees.

## BACKGROUND

These appeals involve Wertheim's three motions for attorney fees incurred in this lawsuit and a separate but related suit.

### A. Original Action and 2009 Judgment

#### 1. Lawsuit

The parties are engaged in dozens of disputes concerning the assignment of royalty rights from third parties. In 2009, a jury found Currency liable to Wertheim for breach of contract and awarded it $38,554.48. (The "original action.") The trial court entered judgment, including interest and costs, as amended, in the amount of $190,718.48. Both parties appealed, and in May 2012 we affirmed the judgment and issued a remittitur in July 2012. (*Wertheim v. Currency Corp.* (May 22, 2012, B218547) [nonpub. opn.] (*Wertheim I*).)

#### 2. First Postjudgment Motion

On March 10, 2016, during its enforcement efforts, Wertheim moved for postjudgment attorney fees incurred to date. (The postjudgment motion.) Such a motion must be filed before

3

the subject judgment has been satisfied.  (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 891 (*Gray1*).) The trial court denied the motion as untimely because the availability of an as-yet unpaid appeal bond satisfied the judgment, and any motion for attorney fees made after that bond became available was untimely.

Wertheim appealed and we reversed, concluding that for timing purposes, a judgment is satisfied not when an appeal bond becomes available but when payment is actually tendered. (*Wertheim LLC v. Currency Corp.* (2019) 35 Cal.App.5th 1124 (*Wertheim IV*).)[2]  We directed the trial court to consider the postjudgment motion "on the merits."  We further directed that Wertheim recover its costs on appeal, which Currency paid.

### 3.    Post-Appeal Motion

On remand from *Wertheim IV*, Wertheim moved under Civil Code section 1717 for attorney fees incurred solely in prosecuting the *Wertheim IV* appeal.  (The post-appeal motion.) It supported the motion with the declarations and time records of three attorneys who worked on the appeal.

Currency opposed the motion, contending that because *Wertheim IV* was an appeal from an order made during postjudgment collection efforts, not from the judgment itself (which had been appealed in *Wertheim I*), any award of attorney fees incurred in prosecuting that appeal was governed by Code of Civil Procedure section 685.040, not Civil Code section 1717. Code of Civil Procedure section 685.040 has a requirement which Civil Code section 1717 does not:  only fees that were necessarily incurred are recoverable.  Currency argued Wertheim was unable

_____

[2] We will introduce *Wertheim II* and *Wertheim III* below.

4

to satisfy the requirement of Code of Civil Procedure section 685.040 that such fees be necessary. Currency also sought a continuance to conduct discovery in to the reasonableness of fees sought.

The trial court denied the continuance, found that Civil Code section 1717 governed (which requires no showing of necessity), and found Wertheim's attorney fees were for the most part reasonable. It therefore granted Wertheim's motion and awarded it $241,399.01.

Currency appeals that order.

## B. Bond Action

### 1. Lawsuit

Currency secured the 2009 judgment in the original action by an appeal bond. Liability on a bond may be enforced expeditiously on noticed motion filed within a year after any appeal is finally determined, or more laboriously by a separate lawsuit. (Code Civ. Proc., § 996.440.)[3] After we affirmed the 2009 judgment (*Wertheim I*), we issued a remittitur in July 2012. This gave Wertheim until July 2013 to file a motion to enforce liability on the bond. However, Wertheim waited until December 2013 to do so, which the trial court found was untimely. Wertheim thereafter initiated a new lawsuit against the bond company to recover on the bond. (The bond action.)

The bond company interpleaded the bond funds and was awarded attorney fees, which our colleagues in Division Five affirmed. (*Wertheim, LLC v. The Bar Plan Mutual Ins. Co.* (Dec. 1, 2016, B268539) [nonpub. opn.] (*Wertheim II*).)

---

[3] Undesignated statutory references will be to the Code of Civil Procedure.

After trial in the bond action, Currency moved for an order allocating the entire amount of the bond company's attorney fees to Wertheim, which the trial court granted, finding allocation of the fees solely to Wertheim was warranted in part because Wertheim had made an untimely claim on the appeal bond.

Division Five affirmed this order as well, holding, "[Wertheim's] delay in seeking to recover on the Appeal Bond is alone sufficient for us to conclude the trial court's allocation decision was not an abuse of discretion. The lawsuit in this case resulted solely from [Wertheim's] failure to timely file a motion in the Underlying Proceeding within a year of the remittitur issuing. Had [Wertheim] done so, the fees incurred by Insurer would not have been incurred (or would have been negligible) and the attorney work necessary in any such enforcement action would have been almost assuredly far less expensive." (*Wertheim, LLC v. Currency Corp.* (Aug. 25, 2017, B270926) [nonpub. opn.] (*Wertheim III*).)

The parties and trial court thereafter negotiated a judgment disbursing $131,000 of the interpleaded funds to Wertheim "in satisfaction of" the underlying, 2009 judgment, "inclusive of principal and interest." That disbursement did not include "post-judgment interest from Currency as to amounts due under [a] March 11, 2016 Order." To cover this interest, Currency paid Wertheim $14,300 in March 2019.

After this payment, Wertheim on April 18, 2019, filed an acknowledgment of full satisfaction of the judgment in the bond action.

C. **Back in the Original Action**

As stated above, on March 10, 2016, during its enforcement efforts, Wertheim moved for postjudgment attorney fees incurred

6

to date. Its efforts continued beyond that date, however, and it incurred further attorney fees.

On February 13, 2020, Wertheim filed an acknowledgment of satisfaction of the judgment in this action, checking the box on Judicial Council form EJ-100 reflecting that the judgment was satisfied in full. However, Wertheim also modified the form by interlineation, specifying that "[t]his acknowledgment applies ONLY to that certain Memorandum of Costs On Appeal (Appeal BC277633) filed September 24, 2020 (Attachment 5a) as to Rule 8.278 costs only, and not any other judgment issued or pending in the above-referenced action or any other action." In other words, Wertheim acknowledged only that Currency had paid the appeal costs, amounting to $3,481.21, incurred in *Wertheim IV*.

### 1. Renewed Postjudgment Motion

Given that we reversed the trial court's denial of Wertheim's March 10, 2016 motion for postjudgment attorney fees and directed the trial court to consider it on the merits, Wertheim renewed the motion, seeking $211,112.65 for fees incurred in prosecuting the bond action.

### 2. Second Postjudgment Motion

On October 30, 2019, Wertheim filed a motion seeking $388,122.52 in postjudgment attorney fees incurred *after* March 10, 2016 in connection with the original action and the bond action, $91,000 of which were incurred more than two years before the motion was filed.

### 3. Rulings

The trial court denied both motions.

#### a. Necessity

To the extent either motion sought fees incurred in the bond action, the court found that Wertheim failed to show the

7

fees "resulted from anything other than its dilatory conduct and should not have been necessary in securing enforcement of the underlying judgment." "[T]he necessity of the Bond Action was created by Wertheim itself," the court found, "since it failed to seek enforcement on the bond within a year of remittitur."

b. Timeliness

To the extent Wertheim sought postjudgment fees incurred in the original action, the court found the motion, filed six months after Wertheim acknowledged full satisfaction of the 2009 judgment, was untimely.

Wertheim appeals these rulings.[4]

We consolidated Currency's and Wertheim's appeals.

## DISCUSSION

We review both statutory interpretation and entitlement to attorney fees de novo. (*Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 524.) In reviewing an order awarding or denying attorney fees, we first "determine whether substantial evidence supports the factual basis on which the trial court acted" (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430), and then determine whether the order constituted an abuse of discretion. (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934.)

## A. Wertheim's Appeal of the Orders Denying Its Renewed and Second PostJudgment Motions

Wertheim renewed its March 10, 2016 postjudgment motion for attorney fees, seeking $211,112.65 for fees incurred in prosecuting the bond action, and on October 30, 2019, filed a

---

[4] Wertheim also requested the $126,000 in bond company fees that the trial court in the bond action had allocated to Wertheim. The trial court here denied that request, which Wertheim abandons on appeal.

8

second motion for postjudgment attorney fees, seeking $388,122.52 for fees incurred between July 2016 and October 2019 in connection with both the original action and the bond action. The trial court denied both motions on the grounds that fees incurred on the bond action were not necessary, and the second motion was untimely.

"Under the 'American rule,' followed in California, 'each party to a lawsuit ordinarily must pay his or her own attorney fees. [Citations.]' [Citation.] An exception to this rule exists where the parties have agreed to 'the measure and mode of compensation of attorneys. [Citation.] For example, a contract may contain a provision providing for attorney fees in enforcing the contract. Where a contract contains such a provision, the court must fix reasonable attorney fees as an element of the costs of the lawsuit." (*Gray1*, *supra*, 233 Cal.App.4th at pp. 889-890.)

Here, the contract at issue in the original action provided that the prevailing party would receive attorney fees incurred in enforcing the contract.

Pursuant to the Enforcement of Judgments Law, section 680.010 et seq., postjudgment fees or costs, including attorney fees incurred in enforcing a judgment, may be added to a judgment when authorized pursuant to contract or statute, to the extent they are "reasonable and necessary." (§ 685.040.)

A motion for such costs "shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred." (§ 685.080, subd. (a).)

### 1. Necessity

Wertheim argues that the trial court abused its discretion when it found that no attorney fees incurred in the bond action were necessary because that action was itself unnecessary. We

9

disagree. Wertheim could have avoided a new lawsuit entirely by filing a timely motion pursuant to section 996.440.

"The liability on a bond may be enforced by civil action." (§ 996.430, subd. (a).) Alternatively, "[i]f a bond is given in an action or proceeding, the liability on the bond may be enforced on motion made in the court without the necessity of an independent action." (§ 996.440, subd. (a).)

If an appeal is taken in the underlying action, a motion to enforce liability on an appeal bond must be made within one year of final determination of the appeal. (§ 996.440, subd. (b).)

We affirmed the 2009 judgment in *Wertheim I* and issued a remittitur in July 2012. This gave Wertheim until July 2013 to file a motion to enforce liability on the bond. It failed to do so until December 2013, rendering its motion untimely and thereby precipitating the bond action against the bond company.

 The trial court had an ample basis upon which to conclude that Wertheim's attorney fees on the bond action were unnecessary. Wertheim's strategy of filing a separate lawsuit, rather than a timely collection motion, fueled litigation in which tangential concerns have come to the fore, resulting in fees highly disproportionate to the result achieved. (See *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 746 [overlitigation appropriately considered in awarding attorney fees].)[5] Under these circumstances, the trial court did not abuse its discretion in finding such litigation to be unnecessary.

---

[5] We pause here to note both parties share significant blame for inflating fees. Currency, for example, made multiple specious arguments on this appeal, and it failed promptly to pay the small underlying judgment, which could have easily avoided most of the fees now being sought.

Wertheim relies on four cases for the proposition that the determination of whether section 685.040 entitles a judgment creditor to attorney fees does not depend upon the forum in which the expenses were incurred: *Jaffe v. Pacelli*, *supra*, 165 Cal.App.4th 927; *Chinese Yellow Pages Co. v. Chinese Overseas Marketing Service Corp.* (2008) 170 Cal.App.4th 868; *Cardinale v. Miller* (2014) 222 Cal.App.4th 1020; and *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267.

We agree with these cases, but in each, resort to the alternative forum was necessitated by the judgment debtor's conduct. Here, the bond action was required largely because Wertheim failed to file a timely motion under section 685.040. As Wertheim acknowledges in its opening brief, the court "is not obligated to grant all of the fees sought by the creditor for all of its activities. It may, in its discretion, reduce the fee award for excessive time spent on ill-considered pursuits." The trial court was within its discretion to find the bond action to be an ill-considered pursuit.

Wertheim argues that categorically denying all of a creditor's fees as unnecessary because it chose one procedural option over another amounts to bestowal of a disfavored status on one of two equally available procedures. Not so. While both procedures are equally available, they are not always equally necessary.

Wertheim argues that in *Wertheim IV* we impliedly found its conduct in the bond action was necessary, to the effect it is now law of the case. However, in *Wertheim IV*, we held only that Wertheim's motion for postjudgment fees incurred in that action was not untimely, implying nothing about the necessity of the bond action.

11

Wertheim argues that in *Wertheim IV* our direction to the trial court to consider Wertheim's motion "on the merits" left the court without jurisdiction to deny fees altogether. We disagree. A consideration of the merits of a motion admits the possibility that the motion has none.

Wertheim argues we would bestow a windfall on Currency were we to conclude that its herculean efforts in the bond action were unnecessary simply because the action itself was unnecessary. We are not insensitive to this concern, and our opinion today in no way endorses Currency's conduct in this litigation, which, as Wertheim correctly points out, has been largely unmeritorious. But the trial courts in this never-ending dispute have always been in a much better position than we to evaluate the relative equities, and two trial courts have found Wertheim's litigation tactics to be unnecessary.

We conclude that the trial court's finding here was supported by substantial evidence and was neither arbitrary, capricious, or patently absurd, and resulted in no miscarriage of justice.

### 2. Timeliness

As previously noted, on October 30, 2019, Wertheim filed its second motion for postjudgment attorney fees, seeking $388,122.52 in fees incurred after March 10, 2016, in connection with both the original action and the bond action, $91,000 of which were incurred more than two years before the motion was filed.

The trial court denied the motion as untimely under section 685.080 because it came six months after Wertheim filed Judicial Council form EJ-100, on which it checked a box representing that the 2009 judgment was satisfied in full. However, Wertheim also

12

modified that form by interlineation, specifying that the acknowledgement applied only to Currency's payment of appeal costs incurred in *Wertheim IV*.

"Payment" for purposes of satisfaction of a money judgment means either (1) the tender of cash or (2) the tender and acceptance of a certified check or similar instrument. (See *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 615; *Gray1*, *supra*, 233 Cal.App.4th at pp. 892-893.)

No evidence suggests that Currency ever tendered full satisfaction of the 2009 judgment, or that Wertheim accepted the tender or acknowledged satisfaction. On the contrary, that Wertheim's March 10, 2016 motion for postjudgment attorney fees was never resolved (until today) suggests that Wertheim deemed the judgment unsatisfied. Therefore, its second motion was not rendered untimely by section 685.080 (insofar as it sought fees incurred within two years of filing the motion). The court therefore erred in denying the motion on timeliness grounds.

Currency argues that once the bond proceeds were disbursed and Currency paid the remaining $14,300 owed in postjudgment interest, there were no other costs or fees to add to the 2009 judgment. It is incorrect. Additional fees were potentially awardable pursuant to Wertheim's March 10, 2016 motion for them, which was revived by *Wertheim IV*, as well as any motion it might bring for fees incurred after that date.

Currency relies upon *Gray1*, *supra*, for the proposition that once a judgment is fully satisfied, it includes only attorney fees actually awarded by a court, not those claimed but as yet unawarded. We do not disagree, but here, the 2009 judgment has not been fully satisfied. Although the judgment in the bond

13

action stated it was "in satisfaction of" the 2009 judgment, "inclusive of principal and interest," it did not purport to be in *full* satisfaction of the 2009 judgment. And Currency adduces no evidence suggesting that any tender it made was conditioned on its being considered as full satisfaction of 2009 judgment.

### 3. Equitable Tolling is Unavailable

Wertheim acknowledges that approximately $91,000 of the fees it seeks in the second postjudgment motion were incurred more than two years before the motion was filed, rendering that request untimely pursuant to the two-year provision of section 685.080, but argues that time limit must be equitably tolled because the pendency of *Wertheim IV* prevented it from filing the second motion. We disagree.

"Equitable tolling is a judicially created doctrine that permits the tolling of a statute of limitations. [Citation.] Equitable tolling is invoked ' " '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one' " ' " to the exclusion of others. (*Gray1*, *supra*, 233 Cal.App.4th at p. 897.) Even were we to assume for purposes of argument that equitable tolling applies to motions as well as actions, it would not apply here because nothing about *Wertheim IV*, which concerned fees incurred up to March 10, 2016, precluded a motion for postjudgment fees incurred after that date. Even though the trial court denied Wertheim's motion for pre-March 2016 fees, it was incumbent upon Wertheim to move for *post*-March 2016 fees within two years to preserve its claim to them.

**B. Currency's Appeal of the Order Granting Wertheim's Post-Appeal Motion**

After our remittitur in *Wertheim IV*, Wertheim moved under Civil Code section 1717 for attorney fees incurred in that appeal, which as discussed above concerned only Wertheim's March 10, 2016 motion for postjudgment attorney fees incurred only in the bond action. The trial court granted the motion, but made no finding that the fees were necessarily incurred, because Civil Code section 1717 required none.

Currency contends that section 685.040, which governs postjudgment fees, not Civil Code section 1717, which governs fees incurred on appeal, controls a motion for attorney fees incurred in enforcing a judgment, even those incurred to appeal a postjudgment enforcement order. As discussed above, such a motion must establish the costs were "reasonable and necessary" (§ 685.040), whereas a motion for costs awardable pursuant to Civil Code section 1717 need establish only that the costs were "reasonable" (Civ. Code, § 1717, subd. (a)).

Currency argues that by failing to consider whether Wertheim's appellate costs were necessary, the trial court applied the wrong standard. Applying the proper standard, it argues, Wertheim's appellate costs were unnecessary as a matter of law because *Wertheim IV* itself was unnecessary given that the bond action upon which it was predicated was itself unnecessary.

We need not decide whether section 685.040 or Civil Code section 1717 applies because Wertheim's litigation strategy has not only been unnecessary under the former, as discussed above, but also objectively unreasonable under the latter.

Wertheim had the option of filing either a collection motion or a separate lawsuit. It chose the lawsuit which, as we have

15

said, unnecessarily exploded its legal fees.  An "award of contractual attorney fees is governed by equitable principles." (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 224; see also *Santisas v. Goodin* (1998) 17 Cal.4th 599, 616 prior version of Civil Code section 1717.)  Equity does not support an award of Wertheim's appellate attorney's fees, and the trial court did not abuse its discretion in denying such an award of appellate fees in *Wertheim IV*.

We also remind the parties that fee awards are fundamentally governed by equitable principles.  The trial and appellate courts in Los Angeles have been involved in dozens of litigations sorting out the rights and obligations of these business rivals in their long running and sometimes personal competition to obtain royalties from third parties.

After the case was submitted, we requested supplemental briefing on whether in evaluating Wertheim's attorney fee requests we may consider equitable principles, given the disproportion of the fees requested and the original judgment.  In response, Wertheim answered that the result achieved may not be "used to evaluate proportionality," and the lodestar may not be "adjusted to achieve proportionality."  Our question was not about evaluating or achieving proportionality but considering equitable principles.  On this question one of Wertheim's citations was helpful:  "[T]he amount of money involved in the litigation is an important factor in determining an award of attorneys' fees." (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1507.)  Equity countenances against awarding attorney fees to parties who litigate unnecessarily or in expensive battles eclipsing the dispute that initially brought them into court.

16

## DISPOSITION

The order granting Wertheim's motion for appellate fees in *Wertheim IV* is reversed with directions to enter a new order denying that motion. The order denying Wertheim's first postjudgment motion is affirmed. The order denying Wertheim's second postjudgment motion is affirmed as to that portion of the fees found to be unnecessary by the trial court and as to that portion incurred more than two years before the motion was filed, but otherwise reversed.

The matter is remanded to the trial court to calculate what portion of the fees Wertheim seeks in its second postjudgment motion may be attributed to the original action only, were sought within two years of having been incurred, and were reasonably incurred. Both sides are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


BENDIX, Acting P. J.


CRANDALL, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17