

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1328-TaFS |
| FRANCISCO TINAJERO, JR. and JACQUELINE SANCHEZ, | Bk. No. 2:17-bk-15755-BR |
| Debtors. | Adv. No. 2:17-ap-01355-BR |
| FRANCISCO TINAJERO, JR., | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| JOSE M. ZAVALA; BLANCA AGUIRRE, | |
| Appellees. | |

Argued and Submitted on May 20, 2020

Filed – August 4, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:      Glenn Ward Calsada argued for appellant; Steve Lopez argued for appellees.

Before: TAYLOR, FARIS, and SPRAKER, Bankruptcy Judges.

Memorandum by Judge Taylor

Concurrence in Part and Dissent in Part by Judge Faris

## INTRODUCTION

After Francisco Tinajero, Jr. and Jacqueline Sanchez filed their chapter 7[1] bankruptcy case, Blanca Aguirre and Jose M. Zavala ("Creditors") filed a complaint against Tinajero to declare a judgment consisting entirely of an attorneys' fee award nondischargeable under § 523(a)(2)(A). Creditors moved for summary judgment, which the bankruptcy court granted. Tinajero appealed. We reversed and remanded for further proceedings.

After remand, the bankruptcy court granted judgment for Tinajero. Tinajero then moved for an award of his post-judgment attorneys' fees and costs, which the bankruptcy court denied. Tinajero appealed.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "CCC" references are to the California Civil Code, and all "CCP" references are to the California Civil Procedure Code.

We AFFIRM.

## FACTS[2]

**The Sale Contract**

Prepetition, Creditors entered into a standard form residential purchase agreement ("Contract")—promulgated by the California Association of Realtors and commonly used in sales of residential property in California—to purchase a residence owned by Tinajero. There is no indication in the record that the parties negotiated, amended, modified, altered, or changed any of the standard language in the form Contract, including paragraphs concerning attorneys' fees and costs in the event of a dispute between the parties.

Specifically, ¶ 21 of the Contract provided, in relevant part, that "[i]n any action[ or] proceeding . . . between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller . . . ."

**The State Court Proceedings**

Creditors fully performed under the Contract, Tinajero refused to close the sale, and Creditors responded with a civil action seeking specific performance of the Contract. In the alternative, their complaint requested

---

[2] We borrow heavily from our earlier decision in this matter, *Tinajero v. Aguirre (In re Tinajero)*, BAP Nos. CC-18-1012-SFL, CC-18-1031-SFL, 2018 WL 4939467 (9th Cir. BAP Oct. 11, 2018) ("*Tinajero I*").

damages.

Sanchez filed a complaint in intervention, asserting that the residence was community property. Her complaint provided Creditors' first notice that Tinajero was married. At this time, they also learned that a temporary restraining order barred Tinajero from selling the residence when he signed the Contract. Creditors responded by filing a cross-complaint in intervention against Tinajero and Sanchez seeking damages for fraud, negligent misrepresentation, and negligent infliction of emotional distress.

After a bench trial, the state court entered a judgment in favor of Creditors for specific performance, a common remedy for breach of a land sale contract, *Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 473-74 (2008). The state court concurrently issued a statement of decision that repeatedly referenced Tinajero's fraudulent conduct and stated that he knowingly misled Creditors. But it made clear that Creditors waived tort damages in favor of the specific performance judgment.

The statement of decision also concluded without discussion that Creditors were entitled to recover their attorneys' fees and costs. It left the amount for later determination.

Thereafter, a different state court judge granted Creditors' motion for attorneys' fees and costs, citing CCC § 1717 and CCP § 1032. The judge wrestled with the fact that neither the statement of decision nor the specific performance judgment specified the legal basis for the fee award. And he

4

was troubled that the Contract required mediation as a prerequisite to any entitlement to fees, yet Creditors never mediated the dispute. He concluded, however, that he had no power to disturb the prior judge's conclusion that a fee award was appropriate and awarded Creditors $52,477.20 in attorneys' fees and costs.

Tinajero did not appeal these rulings and, as required by the specific performance judgment, conveyed fee title to the residence to Creditors. Tinajero and Sanchez then filed a chapter 7 petition.

**The § 523(a)(2)(A) Adversary Proceeding**

Creditors filed a nondischargeability complaint against Tinajero, seeking to have the judgment debt for attorneys' fees and costs declared nondischargeable under § 523(a)(2)(A). After hearing Creditors' summary judgment motion, the bankruptcy court concluded that, based on the state court's findings in the statement of decision, Tinajero was precluded from re-litigating the fraud claim and granted Creditors summary judgment on their § 523(a)(2)(A) claim. Tinajero appealed.

We reversed the bankruptcy court and remanded for further proceedings (*Tinajero I*). We reasoned that while the state court made numerous findings of fraudulent conduct by Tinajero, it granted specific performance and awarded Creditors their fees based solely on Tinajero's breach of the Contract. Thus, the fraud determinations were not essential to the state court judgments and were not entitled to preclusive effect.

At hearing on remand, the bankruptcy court did not try the issues of fraud and, instead, in a summary fashion, determined that the fee award was dischargeable. Creditors have not appealed this decision.

After the judgment became final, Tinajero moved for his attorneys' fees and costs: (1) pursuant to ¶ 21 of the Contract and in accordance with CCC § 1717 and CCP §§ 1021 and 1032; and (2) pursuant to § 523(d). Creditors opposed the motion.

At the hearing on the motion, the bankruptcy court stated that CCC § 1717 was not applicable to the adversary proceeding because a § 523(a)(2)(A) action was not an "action on a contract" and the proceeding did not involve contract interpretation or enforcement.

Tinajero countered that his fees were nevertheless recoverable under CCP § 1021 and pursuant to the broad language of the Contract providing for fees in an action "arising out of" the Contract. Without addressing this argument, the bankruptcy court repeated that fees were not recoverable under California law.

The bankruptcy court determined that it also could not award fees and costs under § 523(d) because Tinajero failed to prove that the debt he owed Creditors was a consumer debt; he presented no evidence regarding his intended use of the proceeds from the sale of his residence. And even if it was a consumer debt, the bankruptcy court determined that Creditors were substantially justified in prosecuting the § 523(a)(2)(A) action up until

6

we issued our *Tinajero I* decision. While the bankruptcy court determined they were not justified in continuing litigation after *Tinajero I*, it also found that special circumstances would make an award of fees and costs unjust.

Thus, the bankruptcy court entered an order denying Tinajero's motion. Tinajero timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in denying attorneys' fees and costs?

## STANDARDS OF REVIEW

We review the bankruptcy court's decision regarding an award of attorneys' fees and costs for an abuse of discretion. *Lionetti v. Law Offices of Steven H. Marcus (In re Lionetti)*, 613 B.R. 13, 18 (9th Cir. BAP 2020) (review of a denial of § 523(d) fees); *Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 720 (9th Cir. BAP 2003) (review of fees awarded under state law). Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Then we determine whether its factual findings and its application of the law were illogical, implausible, or without support in the

7

record. *Id.*

However, "[t]o the extent the issue is whether California law allows the award of attorneys' fees, our review is de novo." *Saccheri v. St. Lawrence Valley Dairy (In re Saccheri)*, BAP No. EC-12-1269-JuKiD, 2012 WL 5359512, at *5 (9th Cir. BAP Nov. 1, 2012), *aff'd*, 599 F. App'x 687 (9th Cir. 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We may affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## DISCUSSION

Tinajero argues the bankruptcy court erred in denying him attorneys' fees and costs: (1) pursuant to the terms of the Contract in accordance with CCP §§ 1021 and 1032;[3] and (2) pursuant to § 523(d). We disagree.

**A. Creditors are not judicially estopped from contesting Tinajero's contractual entitlement to attorneys' fees and costs.**

As an initial matter, we address Tinajero's argument that Creditors' requests for attorneys' fees and costs in their nondischargeability complaint and in a withdrawn motion for attorneys' fees and costs judicially estopped them from contesting Tinajero's entitlement to fees and costs under the Contract. We reject his argument for three reasons.

---

[3] Tinajero does not challenge the denial of fees under CCC § 1717 on appeal.

8

First, if a plaintiff alleges an entitlement for fees and loses, "the plaintiff's bare allegation that he is entitled to receive attorney's fees is not sufficient [to entitle the defendant to fees]; [the plaintiff] also had to have established [an actual entitlement] . . . to recover fees." *Bear Creek Planning Comm. v. Ferwerda*, 193 Cal. App. 4th 1178, 1188 (2011) (citations and internal quotation marks omitted). Here, Creditors never established an entitlement to fees incurred in the adversary proceeding.

Second, "[j]udicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (citations omitted). We find no evidence in the record that Creditors obtained an advantage by taking the initial position that fees were recoverable; the bankruptcy court made no rulings in their favor, or against Tinajero, based on their initial position. Further, their withdrawn fee motion did not request fees under CCP §§ 1021 and 1032.

And finally, as explained *infra*, there is a fundamental difference between a judgment creditor's entitlement to fees under CCP § 685.040, which allows recovery of post-judgment fees under certain circumstances, and the claim of a judgment debtor for post-judgment fees based on an isolated victory in the collection process. *See Globalist Internet Techs., Inc. v. Reda*, 167 Cal. App. 4th 1267, 1274-75 (2008). Thus, Creditors' initial

9

assertion of their right to fees and costs is harmonious with their later assertion that Tinajero is not entitled to fees and costs.

**B. CCP §§ 1021 and 1032 are inapplicable.**

In adversary proceedings and contested matters in bankruptcy, there is no general right to attorneys' fees. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 447-48 (2007); *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Bankruptcy courts, however, may award fees in § 523 actions where authorized by state law. *See Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 451-52; *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998). On appeal, Tinajero cites CCP §§ 1021 and 1032 as the operative state statutes.

Under CCP § 1032, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." *Santisas v. Goodin*, 17 Cal. 4th 599, 606 (1998) (quoting CCP § 1032). But CCP § 1033.5 limits the allowance of attorneys' fees as "costs" under CCP § 1032 to situations where fees are authorized by contract, statute, or other law. *See id.; see also Chase Manhattan Bank v. Deuel (In re Deuel)*, 482 B.R. 323, 327 (Bankr. S.D. Cal. 2012).

Tinajero relies on CCP § 1021, which authorizes an attorneys' fees award as agreed by the parties, as the independent basis for his CCP § 1032 fee request. This statute provides, in relevant part, that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or

10

implied, of the parties . . . ." CCP § 1021. CCP § 1021 allows the parties to agree that the prevailing party in litigation may recover attorneys' fees, whether the litigation sounds in contract or in tort. *3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992).

Tinajero asserts that the Contract's fee provision, which provides for fee-shifting "[i]n any action[ or] proceeding . . . between Buyer and Seller arising out of [the Contract] . . ." covers attorneys' fees and costs for defending against the § 523(a)(2)(A) claim. But he has failed to meet his burden of establishing entitlement to an award of fees under this provision. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award . . . .").

We conclude that the record fails to support that parties to this "form" contract in general or the parties to the Contract in particular mutually intended to provide contractually for the losing party in a breach of contract action to retain contractual rights to attorneys' fees in the judgment collection process. *See* CCC § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."). If possible, such intent is to be derived solely from the written provisions of the contract. CCC § 1639. And, the clear and explicit meaning of contractual provisions, interpreted in their ordinary and popular sense,

11

absent usage by the parties in a technical sense or a special meaning attributed to them by usage, governs our interpretation. CCC §§ 1638 and 1644. Important in this appeal, a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates. CCC § 1647.

Here, the Contract was the standard residential purchase agreement used annually by thousands of California home-buyers. Neither party modified the standard form attorneys' fee language, and the record evidences no specific understanding between the parties as to this clause. Thus, it is reasonable to assume that the clause allowed fee recovery in a case of breach of contract or tortious breach. But there is nothing to suggest that the parties intended to give the breaching party a never-ending right to recover fees if he prevailed at some isolated point in the post-judgment collection process. Absent evidence of such an understanding, the fee provision is appropriately understood not to apply to fees and costs of the judgment debtor in a remote postjudgment collection action.

This must be so because, as explained immediately below, Tinajero seeks a result at odds with California post-judgment collection law, yet he fails to present evidence of an intent to deviate from the normal legal rule. "Under well-established principles of California law . . . because it is [Tinajero] rather than [Creditors] whose interpretation deviates from the normal operation of law, it is [Tinajero] who must pay the price for failing

12

to specify what the contract meant." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 857 (9th Cir. 1992) (internal citation omitted).[4]

While CCP §§ 1021 and 1032 generally entitle a prevailing party to recover attorneys' fees as a cost of litigation as provided under a contract, such statutes do not apply in postjudgment enforcement proceedings. Under California law,

> when a judgment is rendered on a case involving a contract that includes an attorney fees and costs provision, the "judgment extinguishes all further contractual rights, including the contractual attorney fees clause. Thus, in the absence of express statutory authorization, . . . postjudgment attorney fees cannot be recovered."

*Jaffe v. Pacelli*, 165 Cal. App. 4th 927, 934 (2008) (quoting *Berti v. Santa Barbara Beach Props.*, 145 Cal. App. 4th 70, 77 (2006)); *see also Globalist Internet Techs., Inc.*, 167 Cal. App. 4th at 1274.

CCP § 685.040 addresses the "problem unique to a claim for postjudgment fees in actions based on contract." *Jaffe*, 165 Cal. App. 4th at

---

[4] For this reason, the dissent's argument that "the very broad language of the contractual provision easily captures such proceedings" misses the mark. We acknowledge that courts have held that broadly worded fee provisions may encompass both contract and tort actions. *See e.g., Asphalt Prof'ls, Inc. v. Davis (In re Davis),* BAP No. CC-18-1326-FLKu, 2019 WL 2931668 (9th Cir. BAP July 3, 2019) ("*Davis*") (holding phrase "action arising out of" covered § 523(a)(2)(A) claim), *aff'd*, 809 F. App'x 415 (9th Cir. 2020). But the dissent cites no authority, nor have we located any authority, holding that a broadly worded attorneys' fee provision that does not by its express terms survive judgment entitles a California judgment debtor to fees in a post-judgment collection action.

934 (quoting *Berti*, 145 Cal. App. 4th at 77). It entitles a judgment creditor to postjudgment attorneys' fees incurred in enforcing the judgment "if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." CCP § 685.040. CCP § 1033.5(a)(10)(A) qualifies attorneys' fees provided under a contract as "costs" for purposes of CCP § 1032. Thus, a postjudgment fee award under CCP § 685.040 is "not based on the survival of the contract, but is instead based on the award of attorney fees and costs in the trial judgment." *Jaffe*, 165 Cal. App. 4th at 935.

CCP § 685.040, therefore, does not revive a contractual right to attorneys' fees for either party; it instead creates an independent right under California law to attorneys' fees for a judgment creditor. *Rodarte v. Cohen (In re Rodarte)*, No. SACV 11–553 SVW, 2012 WL 11980860, at *4 (C.D. Cal. Aug. 24, 2012). Any right to postjudgment attorneys' fees is not pursuant to the contract, but rather is provided for by operation of California statutory law. *Id.*

Actions taken in bankruptcy proceedings may qualify as enforcement proceedings contemplated by, and subject to, CCP § 685.040. *See, e.g., Jaffe*, 165 Cal. App. 4th at 938; *Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*, 170 Cal. App. 4th 868, 888 (2008), *as modified* (Jan. 26, 2009), *as modified on denial of reh'g* (Jan. 29, 2009). In *Jaffe*, a state court entered a judgment against a debtor that included an award of attorneys' fees. The

debtor responded with a chapter 7 bankruptcy. The creditor initiated an adversary proceeding for a determination that the debtor was not entitled to have the judgment debt discharged, and the creditor eventually succeeded in having the bankruptcy dismissed. *Jaffe*, 165 Cal. App. 4th at 931. The creditor then sought his attorneys' fees and costs related to litigating the bankruptcy proceedings pursuant to CCP § 685.040 as fees incurred to enforce the underlying judgment. The Court of Appeal noted that the judgment extinguished all contractual rights, including the contractual attorneys' fees clause. But it held that the creditor could recover fees incurred in bankruptcy to enforce the judgment as a matter of statutory right as conferred by CCP § 685.040.

Relying on *Jaffe*, the Court of Appeal in *Globalist Internet Techs., Inc.* held that the trial court abused its discretion in denying a judgment creditor its attorneys' fees and costs incurred in defending against a subsequent action brought by the judgment debtors to enforce an alleged settlement of the judgment for a lesser sum. 167 Cal. App. 4th at 1274-75. The Court of Appeal noted that

> [t]he sole purpose of the specific performance action filed by
> [judgment debtors] was to significantly decrease their
> unsatisfied judgment debtor obligations in *this* action. . . . Had
> [judgment creditor] not defended against the specific
> performance action, it would have lost substantial rights under
> the judgment in this case. Accordingly, the attorney fees it
> incurred in defense of the companion action were incurred in

15

enforcing the judgment.

*Id.* at 1276.

In that regard, California law may entitle a judgment creditor to attorneys' fees and costs incurred in a subsequent § 523(a)(2)(A) action to except a prepetition judgment debt from discharge; the purpose of the action is to enforce the judgment. But the same cannot be said for a judgment debtor who successfully defends such an action. There is no comparable California statute providing for its recovery of attorneys' fees and costs.[5] The debtor must seek recovery under § 523(d) or a contract

---

[5] The dissent dismisses *Berti*, *Jaffe* and *Globalist* as distinguishable because they dealt with the rights of a successful judgment creditor—as opposed to a successful judgment debtor—to recover attorneys' fees for post-judgment litigation. But the dissent cites no authority providing for a judgment debtor's recovery of contractual attorneys' fees in collection proceedings, presumably because none exist; a collection proceeding arises out of a judgment, not out of a contract.

And in that regard, while the dissent correctly articulates the substantive law on claim preclusion, it is applying the law in the wrong context. Creditors' nondischargeability action is a collection proceeding on a judgment utilizing a federal statute. It is not necessary to reference the Contract in any fashion, as the dissent even acknowledges. In a different case, where the debt a creditor seeks to except from discharge is unliquidated, the action may arise out of the contract. After all, as the dissent points out, a contract claim may merge with a judgment while other contract claims are preserved as unliquidated. *See Gietzen v. Covenant RE Management, Inc.*, 40 Cal. App. 5th 331 (2019), *review denied* (Jan. 2, 2020). But where, as here, the contract is utterly in the rear-view mirror, the action does not arise out of the contract.

We further note that the dissent's view of California law as entitling a judgment debtor to contractual attorneys' fees in post-judgment collection proceedings, if adopted, would render CCP § 685.040 a nullity in a material respect—a result that should be avoided. *See Thornburg v. Super. Ct.*, 138 Cal. App. 4th 43, 49 (2006), *as modified*

(continued...)

16

provision that so provides.

For the foregoing reasons, the bankruptcy court did not err in denying Tinajero his fees and costs under California law.[6]

## C. Section 523(d) fees are unavailable.

Neither did the bankruptcy court err in denying fees and costs under § 523(d). Section 523(d) provides that

---

[5](...continued)
*on denial of reh'g* (Apr. 20, 2006) ("[C]anons generally preclude judicial construction that renders part of the statute 'meaningless or inoperative.'"). Specifically, CCC § 1717 provides that if one party to a contract has a right to fees, so does the other. So, while under the dissent's view claim preclusion would deprive the judgment creditor of the right to fees on the one hand, CCC § 1717 would give the right back with the other because the judgment debtor retained its right to contractual fees post-judgment. And if that were the case, then CCP § 685.040 would not serve one of its intended purposes. *See Jaffe,* 165 Cal. App. 4th at 935 ("In 1992, the Legislature amended Section 685.040 to provide that *if* the underlying judgment included an award of contractually-based attorney fees, the party seeking to enforce the judgment may obtain post-trial attorney fees incurred to enforce the judgment.").

[6] And finally, we make a practical point. Once a judgment is rendered on a contract, all claims related to the judgment and the causes of action that support it are finally determined, and the contract and its attorneys' fee provisions are no longer operative as to the claims underlying the judgment and the judgment itself, absent contractual language not present here. The right to attorneys' fees flows from statute. But if the Contract and its attorneys' fee clause remain operative, we would not simply award fees to Tinajero. The parties' respective contractual attorneys' fees arose from the same prepetition Contract. Tinajero's fees would appear to be subject to the doctrine of recoupment. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996). The prepetition award to Creditors cannot otherwise be collected, but it may be sufficiently mutual such that it would offset any fee award to Tinajero to the extent of any principal and appropriately considered interest accrual. At best, for Tinajero, we would remand for consideration of this point.

[i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

To recover fees under § 523(d), a debtor must prove that: (1) the creditor requested a determination of the dischargeability of the debt under § 523(a)(2); (2) the debt is a consumer debt; and (3) the debt was discharged. *Am. Sav. Bank v. Harvey (In re Harvey)*, 172 B.R. 314, 317-18 (9th Cir. BAP 1994). If the debtor demonstrates these elements, then the burden shifts to the creditor to demonstrate that its position was substantially justified or special circumstances would make an award unjust. *Id.*

Although Creditors filed a complaint alleging actual fraud under § 523(a)(2) and the bankruptcy court entered a judgment discharging the underlying debt, Tinajero failed to establish that the debt he owed Creditors was a consumer debt. And, even if the debt was a consumer debt, he would not be entitled to fees and costs because (1) Creditors were substantially justified at all times in prosecuting their § 523(a)(2) claim; and (2) special circumstances would make an award of fees unjust. Therefore, the bankruptcy court did not abuse its discretion in denying fees and costs.

18

**1. The debt was not a consumer debt.**

The phrase "consumer debt" is defined in § 101(8) as a "debt incurred by an individual primarily for a personal, family or household purpose." "It is settled in this circuit that the purpose for which the debt was incurred affects whether it falls within the statutory definition of 'consumer debt' and that debt incurred for business ventures or other profit-seeking activities does not qualify." *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001) (citation omitted) (interpreting § 101(8) "consumer debt" in the context of § 1322(b)(1)). However, "[a]n inability to classify a particular debt as a business debt does not automatically relegate it to the status of a consumer debt." *In re Marshalek*, 158 B.R. 704, 708 (Bankr. N.D. Ohio 1993) (citation omitted). Tort liability judgments, for example, "do not fit within either category of § 101(8)'s definition of a consumer debt." *Id.* at 707.

Tinajero argues that the attorneys' fees and costs debt at issue is necessarily a consumer debt because it was on account of his refusal to sell his residence. We disagree; the debt arose because Tinajero entered into the sale contract in violation of a state court restraining order, breached the contract, engaged in actions that the state court labeled as fraud, and then lost in state court litigation. It is unclear what he intended to do if the sale closed or whether he intended to defraud his then estranged wife or the Creditors or both, but this was not a consumer debt within any commonly, or even uncommonly, understood meaning of the term. The purpose of the

19

debt was to compensate Creditors for their litigation costs in seeking remedies for Tinajero's breach of contract; the causal connection between the debt and the fact that the property was Tinajero's residence is too remote to describe the debt as one "primarily for a personal, family, or household purpose."

Moreover, on appeal Tinajero neither argues nor points to any evidence that the purpose of either the sale of his residence or his breach of the Contract leading to the litigation debt was consumer in nature. *Cf. Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 873 F.3d 1060, 1067 (9th Cir. 2017) ("We have never . . . held that debts used to purchase homes are consumer debts as a matter of law . . . ."). In *Cherrett*, the Ninth Circuit held that, even though the debtor obtained a loan to buy a personal residence, which is generally considered a consumer debt, and he did in fact use those funds to buy it, the debt was not a consumer debt because the loan had a business purpose. *Id.* at 1067-68; *see also Bushkin v. Singer (In re Bushkin)*, BAP No. CC–15–1285–KiKuF, 2016 WL 4040679, at *8 (9th Cir. BAP July 22, 2016). Thus, the purpose behind Tinajero's actions that gave rise to the attorneys' fees and cost debt at issue is determinative of whether the debt is a consumer debt.

Here, the state court's findings reveal that Tinajero entered into the Contract as part of a fraudulent scheme. His breach of the Contract was a natural consequence of his scheme. Specifically, the state court found that a

20

temporary restraining order issued in marital dissolution proceedings prohibited him from selling the residence. Moreover, the state court found that Tinajero neither consulted with Sanchez in listing the residence for sale nor cooperated with her when she requested an accounting of the sale proceeds. In fact, the state court found that Tinajero intended to sell the residence and pocket all of the sale proceeds without informing Sanchez of the sale. Further, as to Tinajero's intent to defraud Creditors, the state court determined that he knowingly misled Creditors to induce them to enter into the Contract.

Even though the state court's attorneys' fees and costs judgment was not based on fraud so as to establish § 523(a)(2)(A) liability, there is no question from the state court's statement of decision that fraud was at the essence of the sale transaction. There were no facts in the record for the bankruptcy court to have reasonably inferred otherwise. Accordingly, we find no error in the bankruptcy court's determination that the debt was not a consumer debt.

**2. Creditors were substantially justified in prosecuting the action.**

We also determine that Creditors were substantially justified in prosecuting the action. A creditor is "substantially justified" in bringing a § 523(a)(2) claim if the claim has a "reasonable basis both in law and in fact." *First Card v. Hunt (In re Hunt)*, 238 F.3d 1098, 1103 (9th Cir. 2001) (citation omitted). The bankruptcy court held that Creditors were

substantially justified in prosecuting their § 523(a)(2)(A) claim only up until we issued our *Tinajero I* decision, at which point their continued prosecution became unjustified. The bankruptcy court reasoned that Creditors were initially justified because the state court clearly found fraud, and it was only "pure happenstance and luck of the debtor" that the judgment debt was dischargeable because the trial judge who entered the statement of decision finding fraud did not also enter the judgment awarding Creditors' attorneys' fees and costs. The bankruptcy court suspected that, had the same judge handled the statement of decision and judgment, then the judgment would likely have clarified that the debt was due to the fraud; collateral estoppel would have applied. We agree with the bankruptcy court's assessment of substantial justification here. Creditors had a reasonable basis in fact and law to bring their claim.

But we disagree with the bankruptcy court's conclusion that Creditors lost their justification after *Tinajero I* merely because we held that collateral estoppel was unavailable. We remanded to allow the bankruptcy court to conduct further proceedings in the case, and we clarified that

> [o]ur holding that the bankruptcy court incorrectly applied issue preclusion in favor of Aguirre and Zavala is not meant to suggest that Tinajero is entitled to judgment as matter of law on Aguirre's and Zavala's nondischargeability claim. We express no opinion regarding whether and how Aguirre and Zavala can prove on remand that their claim for fees and costs arose from Tinajero's fraud for purposes of their claim under

22

§ 523(a)(2)(A).

*Tinajero I*, 2018 WL 4939467 at *7 n.8. Thus, on remand, the bankruptcy court was free to conduct a trial and independently find the requisite fraudulent basis for the judgment debt to be deemed nondischargeable. Had we concluded that *Tinajero I* disposed of a groundless § 523(a)(2)(A) claim, we would have issued a tightly focused remand requiring the bankruptcy court to enter judgment in Tinajero's favor. Creditors' § 523(a)(2)(A) claim was not dead by virtue of the unavailability of collateral estoppel. The bankruptcy court erred in determining that they were not substantially justified in prosecuting their claim after *Tinajero I*. Such error was harmless, however, because the bankruptcy court denied Tinajero § 523(d) fees and costs on other grounds.

### 3. Special circumstances would make a fee award unjust.

We also discern no reversible error in the bankruptcy court's determination that special circumstances would make an award of fees and costs to Tinajero unjust. The "special circumstances" exception in § 523(d) "should be interpreted with reference to traditional equitable principles." *In re Hunt*, 238 F.3d at 1104 (quoting *In re Hingson*, 954 F.2d 428, 429-30 (7th Cir. 1992)). "For example, 'if a debtor could somehow be found to have procured the creditor's groundless claim of fraud, the exception for special circumstances would justify the denial of the debtor's application for attorney's fees.'" *Id.* (quoting *In re Hingson*, 954 F.2d at 430). Given the

egregious state court findings of fraud and Tinajero's failure to advance any plausible alternative theory for the judgment debt, we agree with the bankruptcy court that an award would be unjust.

## CONCLUSION

Based on the foregoing, we AFFIRM.

Concurrence in Part and Dissent in Part begins on next page.

FARIS, Bankruptcy Judge, concurring in part and dissenting in part.

Although I agree with much of the majority's reasoning, I disagree on a key point, and as a result, I believe that we should vacate the bankruptcy court's decision and remand. Therefore, I respectfully concur in part and dissent in part.

After a brief trial, the bankruptcy court ruled that Creditors' claim against Tinajero for attorneys' fees was dischargeable. Creditors have not appealed that decision, so the die is cast: Creditors filed a nondischargeability action and lost.

The bankruptcy court held that Tinajero could not recover his attorneys' fees from Creditors. That is the only decision before us.

I agree with the majority that Tinajero was not entitled to his fees under § 523(d). It is implicit in the majority's decision, and I agree, that § 523(d) is not the exclusive basis on which a debtor might recover attorneys' fees in a nondischargeability proceeding. Debtors who prevail in such a proceeding should also be able to recover fees if and to the extent permitted by applicable nonbankruptcy law. I also agree that judicial estoppel does not apply.

CCC § 1717(a) and CCP §§ 1021 and 1032 are the only nonbankruptcy statutes that potentially allow an award of attorneys' fees in a case like this one.

The bankruptcy court correctly ruled, and Tinajero wisely concedes,

1

that CCC § 1717(a) does not apply. A proceeding under § 523 is not an "action on a contract" unless the bankruptcy court needed to determine whether the contract was enforceable. *Bos v. Bd. of Trs.*, 818 F.3d 486, 489-90 (9th Cir. 2016).

The bankruptcy court overlooked CCP §§ 1021 and 1032. Regardless, we can and should affirm on any basis supported by the record. *See Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012). If those sections would not support an award of fees, we should affirm. Conversely, if those sections could support an award of fees, we must vacate the bankruptcy court's decision and remand so that court can apply the correct law. Thus, we must examine those sections.

As the majority states in more detail, CCP §§ 1021 and 1032, taken together, mean that contractual attorneys' fees provisions are generally enforceable.

In this case, paragraph 21 of the agreement between Tinajero and Creditors provides that, "In any action, proceedings, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller," with an exception that no one argues is

applicable.[1]

The majority holds that Tinajero was not entitled to fees under these statutes and this contract for two reasons. I cannot subscribe to either of those reasons.

First, the majority holds that the parties did not intend to permit an award of fees incurred in a post-judgment dischargeability proceeding. I disagree; the very broad language of the contractual provision easily captures such proceedings. An adversary proceeding to determine the dischargeability of a debt incurred in a transaction governed by a contract "arises out of" that contract, in the ordinary sense that if there were no contract, there would be no debt to discharge.

In the majority's view, "there is nothing to suggest that the parties intended to give the breaching party a never-ending right to recover fees if he prevailed at some isolated point in the post-judgment collection process." But in my view, the broad, simple terms of the contract suggest exactly that. Even under California's relaxed version of the parol evidence rule, the plain language of the contract is at least the starting point, and usually the ending point, for contract interpretation. *See Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 566 (2010) ("Under

---

[1] Paragraph 26A obligates the parties to mediate "any dispute or claim arising between them out of this Agreement, or any resulting transaction" and provides that any party who fails to mediate cannot recover any otherwise recoverable attorneys' fees.

statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. . . . [I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (citations and quotation marks omitted)). Neither party argued, or offered evidence, that the provision suffered from a latent or patent ambiguity. *See Wolf v. Super. Ct.*, 114 Cal. App. 4th 1343, 1351 (2004), *as modified on denial of reh'g* (Feb. 19, 2004) ("Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." (citations omitted)). Similarly, neither party argued, or offered evidence, that the circumstances and subject matter of the contract would support a deviation from its plain language. *See Am. Alt. Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1245 (2006) ("We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates."); CCC § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title."); CCC § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.").

Second, the majority holds that the entry of judgment on a contract destroys the parties' rights under a contractual attorneys' fee provision, the only basis for recovery of post-judgment fees in a contract case is CCP § 685.040, and that section only permits the judgment creditor, not the judgment debtor, to recover fees.

The majority relies on California decisions broadly stating that, "Generally, when a judgment is rendered on a case involving a contract that includes an attorney fees and costs provision, the judgment extinguishes all further contractual rights, including the contractual attorney fees clause. Thus, in the absence of express statutory authorization, . . . postjudgment attorney fees cannot be recovered." *Jaffe v. Pacelli*, 165 Cal. App. 4th 927, 934 (2008) (citations and quotation marks omitted) (citing and quoting *Berti v. Santa Barbara Beach Props.*, 145 Cal. App. 4th 70, 77 (2006)).[2] The majority correctly observes that CCP § 685.040

---

[2] Not all California decisions hew to this broad statement. For example, in *Gietzen v. Covenant RE Management, Inc.*, 40 Cal. App. 5th 331 (2019), *review denied* (Jan. 2, 2020), the tenant successfully sued for breach of a commercial lease. She then attempted to collect from the landlord's (asserted) alter ego, but was stymied by a lease provision that prohibited collection from anyone other than the landlord. She argued that the lease provision was no longer enforceable because the entire lease had merged into the earlier judgment on the breach of contract. The court of appeal disagreed, stating that "the rule would be better stated that **the particular cause or causes of action on the contract are merged into the judgment, not the contract itself**. Thus, a judgment favorable to plaintiff does not bar a different cause of action brought by plaintiff on the same contract." 40 Cal. App. 5th at 337 (citation omitted) (emphasis added). In other words, only the causes of action that were litigated, and not the entire contract, merge

(continued...)

5

reverses this rule and allows the judgment creditor to recover post-judgment fees if the judgment includes a fee award.

All of those decisions are distinguishable, however, because they all dealt with the rights of a successful *plaintiff* to recover contractual attorneys' fees for post-judgment litigation. None of them addressed the question whether a *defendant* who suffers an adverse judgment, but who prevails in post-judgment litigation, can recover attorneys' fees under the contract. To answer this question, we must look further.

The rule of *Jaffe* and *Berti* rests on the doctrines of merger and bar. "A judgment does not act as a merger and a bar to statutory fees." *Berti*, 145 Cal. App. 4th at 77.

The doctrines of merger and bar are forms of claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008) ("Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" (citation omitted)). The California Court of Appeal explained the interplay between claim preclusion, merger, and bar:

> [C]laim preclusion applies not just to what was litigated, but

---

(...continued)
with the judgment. The Ninth Circuit recently cited *Gietzen* with approval in *Asphalt Professionals, Inc. v. Davis (In re Davis)*, 809 F. App'x 415, 416 (9th Cir. 2020). *See also Schafer v. Wholesale Frozen Foods, Inc.*, 242 Cal. App. 2d 451 (1966) (holding that a judgment for unpaid rent for certain periods under a lease did not extinguish the lease, such that the tenant remained liable for rent for subsequent periods).

more broadly to what could have been litigated. Here, under what is sometimes known as the rule against 'claim splitting,' the doctrines of bar and merger do the work. 'Merger' expresses the idea that, **for a winning plaintiff,** all claims the plaintiff did raise or could have raised merge into the judgment in his favor. If the plaintiff attempts to litigate any of those claims again, the judgment itself serves as a defense. 'Bar,' on the other hand, refers to the related idea that a judgment for a winning defendant bars the plaintiff from litigating any claims he brought or could have brought in the prior suit.

*Guerrero v. Dep't of Corr. & Rehab.*, 28 Cal. App. 5th 1091, 1098 (2018) (citations omitted) (emphasis added).

When the plaintiff recovers a judgment against the defendant, claim preclusion (i.e., merger and bar) affects the rights of the plaintiff and the defendant in different ways. Restatement (Second) of Judgments § 18[3] provides:

When a valid and final personal judgment is rendered **in favor of the plaintiff**:

(1) **The plaintiff cannot thereafter maintain an action** on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did

---

[3] California courts generally rely on the Restatements, *see DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 821-22 (2015) (citing the Restatement (Second) of Contracts and Restatement (Second) of Judgments), and in particular have cited Restatement (Second) of Judgments § 18 when discussing merger, *see Guerrero*, 28 Cal. App. 5th at 1098.

interpose, in the first action.

Restatement (Second) of Judgments § 18 (emphases added). Claim preclusion (i.e., merger and bar) does not prevent a defendant from exercising its contractual rights to attorneys' fees in post-judgment litigation, because the right to attorneys' fees is not a "defense" to the plaintiff's claims.

This adheres closely to the policies that support all preclusion doctrines. American law generally precludes relitigation of claims and issues in order to protect the parties and the court system from wasteful repetition and to avoid inconsistent results. "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties,' thereby 'protect[ing]' against 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (citations omitted); *see also Pedrina v. Chun*, 906 F. Supp. 1377, 1398 (D. Haw. 1995), *aff'd*, 97 F.3d 1296 (9th Cir. 1996) (Preclusion "protects the integrity of the courts and promotes reliance upon judicial pronouncements by requiring that the decisions and findings of the courts be accepted as undeniable legal truths. Res Judicata furthers the finality of legal disputes and eliminates the time and expense of relitigation by requiring that parties bring all claims arising out of a transaction, or series of connected

transactions, in one action."). Forbidding a plaintiff from suing and recovering more than once for the same breach of a contract furthers these policies. *See B & B Hardware, Inc.*, 575 U.S. 138 at 147 ("In short, 'a losing litigant deserves no rematch after a defeat fairly suffered.'" (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991))). But preventing a defendant from recovering attorneys' fees for post-judgment litigation, where the underlying contract entitled the defendant to those fees and the defendant prevailed in that litigation, does not.

For these reasons, I think that the bankruptcy court's decision rests on an erroneous view of the law and that it must be vacated. If the matter were remanded, I would emphasize that an award of attorneys' fees is always subject to the trial court's sound discretion. *See Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.)*, 75 B.R. 250, 253 (9th Cir. BAP 1987) ("[I]t has long been held that the trial court is in the best position to resolve disputes over legal fees. Thus, the standard of review is whether the court abused its discretion." (citations omitted)). I would state that the court should carefully consider whether the amount of fees is reasonable under all of the relevant circumstances, including (among many other things) the extent to which the defendant was successful in both legal and practical terms.[4]

---

[4] In this regard, it may be relevant that the judgment creditor in a case like this

(continued...)

(...continued)
one could likely offset the defendant's attorneys' fees against the creditor's claims, rather than pay them in cash.