Filed 12/24/20  Belanger v. Biggs CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NANCY BELANGER et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>EDWARD BIGGS et al.,<br><br>    Defendants and Appellants. | B296853, B297614<br><br>(Los Angeles County<br>Super. Ct. No. BC611723) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed in part and reversed in part.

Buchalter, Douglas C. Straus, Harry W.R. Chamberlain II and Robert M. Dato for Defendants and Appellants Edward Biggs and Biggs Realty, Inc.

Grebow & Rubin, Arthur Grebow and Julie H. Rubin for Defendants and Appellants Pacific Palisades Bowl Mobile Estates, LLC, a California Limited Liability Company, Pacific Palisades Bowl Mobile Estates, LLC, a Nevada Limited Liability

Company and Pacific Palisades Bowl Mobile Estates, LLC, a Deleware Limited Liability Company.

Brown White & Osborn, Thomas M. Brown, Kenneth P. White; Esner, Chang & Boyer and Stuart B. Esner for Plaintiffs and Respondents.

_____

Edward Biggs (Biggs); Biggs Realty, Inc. (Biggs Realty); Pacific Palisades Bowl Mobile Estates, LLC, a California Limited Liability Company (CA LLC); Pacific Palisades Bowl Mobile Estates, LLC, a Nevada Limited Liability Company (NV LLC); and Pacific Palisades Bowl Mobile Estates, LLC, a Delaware Limited Liability Company (DE LLC) appeal from a judgment awarding Nancy Belanger and Gaelyn Marvin compensatory damages, punitive damages, and attorney fees.[1]  Belanger and Marvin were residents of a mobile home park, the Pacific Palisades Bowl Mobile Estates (the park).  This lawsuit stems from Biggs's removal of Belanger's and Marvin's mobile homes from the park without their knowledge or consent.  Defendants challenge the jury's awards of compensatory and punitive damages and the trial court's award of attorney fees.  We affirm in part and reverse in part.

_____

[1] The CA LLC, NV LLC, and DE LLC are referred to collectively as the LLC defendants.

## BACKGROUND

I.    A landslide damages the mobile homes in the park.

Belanger and Marvin were residents at the park where Belanger owned two mobile homes and Marvin owned one.[2] Belanger purchased her first mobile home in the park in 1996 and planned to use it as her retirement home. Belanger also had a second adjacent mobile home that the prior resident bequeathed to her after passing away in 2011. Marvin purchased her home in the park in 1995 and planned to move her elderly and infirm parents into it to care for them.

In January 2005, heavy rains caused a landslide on the hillside above Belanger's and Marvin's mobile homes, damaging them. The Department of Housing and Community Development (HCD) ordered the residents to evacuate their mobile homes due to the hillside's instability until HCD determined that they were safe to reoccupy.[3]

Two weeks after the landslide, Marvin and Belanger returned to their mobile homes where they lived for almost a year.[4] The damage to the mobile homes manifested several

---

[2] While Belanger and Marvin owned their mobile homes, they leased the spaces from the park where their mobile homes were situated.

[3] HCD is the agency that oversees mobile and manufactured home parks in California.

[4] The record is unclear as to whether HCD temporarily lifted the order to vacate at this time while Marvin and Belanger reoccupied their mobile homes. However, by the spring of 2015,

3

months after the landslide as a result of the ground movement beneath them.

II.    The park residents sue the park owners and enter into a settlement agreement.

In 2006, Belanger, Marvin, and three other park residents sued Biggs, the former park owner, and third parties.[5] The complaint alleged that the park owners failed to maintain the hillside above the park, which caused the landslide. The park residents sought damages for loss of use of their homes and personal property, moving expenses, loss of use of the leases, loss of enjoyment of their homes and leases, emotional distress, and attorney fees.

While the lawsuit was pending, Biggs served the park residents with a 60-day notice to terminate their tenancies in the park. The park residents obtained a preliminary injunction which enjoined the park owners from terminating their tenancies. In a subsequent order concerning the preliminary injunction, the trial court clarified that the preliminary injunction was predicated upon the park residents' representation that as a result of HCD's order to vacate, the park residents had vacated their mobile homes. The trial court stated that it understood the term vacate to include that park residents had "removed all personal property from each mobile home and

---

defendants had not yet applied to HCD for the requisite permit to stabilize the hillside.

[5] Biggs and the CA LLC purchased the park from its previous owner after the landslide.

4

lot.  To the extent any personal property remains in the mobile home and/or lot, it shall be deemed abandoned."

In 2011, the parties settled.  The settlement agreement contained a general release of liability for conduct occurring "from the beginning of time to the date of execution of this Agreement."  It also contained a Civil Code section 1542 waiver limiting the general release to those claims that park residents knew of or suspected to exist at the time of the settlement.

The agreement terminated the park residents' tenancies in the park, but allowed them to reestablish their leasehold interests in their respective spaces for the same rental rate at the time of landslide if and when HCD withdrew the order to vacate. The park residents had no obligation to remove their mobile homes from their spaces and were allowed to access their mobile homes upon 24 hours' notice to Biggs.  Biggs was permitted to remove the mobile homes from the park without any obligation to replace them under two conditions.  Biggs could remove the mobile homes if specifically ordered to so do by HCD or another governmental agency or if their removal was necessary to stabilize the hillside above the park.  The five park residents, including Belanger and Marvin, received $1.4 million "for physical damage to and/or loss of use of tangible property."

The parties' counsel in the prior action arranged for the park residents to store their personal property and items in their homes after the case settled.  The park residents believed that the preliminary injunction was no longer in effect, allowing them to store their possessions in their mobile homes.  Belanger and Marvin did not remove their personal property from their homes after the settlement.

III.    Biggs removes Belanger's and Marvin's mobile homes from the park without their knowledge.

In 2013, Biggs decided to develop the park into an "upscale resort community." He planned to purchase the older homes from the residents, demolish them, and build two-story manufactured homes in their place that would cost approximately $500,000 to $1 million each. Biggs targeted Belanger's and Marvin's mobile homes because they were older mobile homes and were located on spaces with the best ocean views.

Thereafter, Biggs made numerous misrepresentations to Belanger and Marvin, asserting, for example, that he had permission to remove their homes pursuant to various orders from state agencies, including HCD, so that Biggs could stabilize the hillside. Biggs acknowledged that it would be easier to remove Belanger's and Marvin's mobile homes without their consent instead of negotiating a price for them.

In July 2015, without Belanger's or Marvin's consent or knowledge, Biggs removed their mobile homes from the park. Belanger and Marvin did not learn of their removal until they saw the empty spaces where their mobile homes used to be from a road overlooking the park. Their private investigator discovered that Belanger's mobile homes were removed from the park and sold to third parties. The park's manager had forged Belanger's signature on the bills of sale and applications for duplicate titles for her homes in order to sell the mobile homes. Marvin's mobile home was never found.

Before Biggs removed Belanger's and Marvin's mobile homes, he misrepresented that he had obtained permission from HCD to remove them. Only weeks before Biggs removed the

6

mobile homes from the park, Marvin faxed him a request to give her and Belanger at least one month's notice so that they could remove their personal property they had stored there. Belanger listed her personal property in each of her mobile homes, estimating the total value of the items inside at $50,000 Belanger had not removed any items in either of her homes between 2010 and 2015. Belanger had also made improvements to her mobile home that she intended to remove if Biggs was going to demolish it.

Marvin had also stored personal property in her mobile home since her current residence was much smaller and had no room for all of her furniture and belongings. Marvin estimated that the value of her personal property and fixtures was at least $30,000. The park managers stated that they witnessed movers take Belanger's and Marvin's property out of the mobile homes when Biggs ordered their removal.

Biggs knew that he did not own the homes or have any right to have them removed except under the conditions of the settlement agreement. He also understood that the agreement only provided for removal of the mobile homes, not their demolition or sale to third parties.

IV.  Belanger and Marvin sue Biggs and his companies for the loss of their mobile homes.

Belanger and Marvin sued Biggs, Biggs Realty, and the LLC defendants. The complaint alleged causes of action for conversion, trespass, breach of written contract, breach of the implied covenant of good faith and fair dealing, and actual fraudulent conveyance. Biggs moved for summary judgment, arguing that the settlement agreement from the prior action barred Belanger's and Marvin's causes of action for conversion,

trespass, breach of written contract, and breach of the implied covenant of good faith and fair dealing. The trial court denied the motion, finding that the settlement agreement did not preclude Belanger's and Marvin's causes of action because they were based on the defendants' new conduct of removing and converting the homes. The trial court also rejected defendants' claims that the current action sought a double recovery for damages in the prior action.

However, the trial court decided to conduct a bench trial to adjudicate defendants' challenge that the settlement agreement's terms were ambiguous and susceptible to other interpretations. Defendants argued that the general release barred all future known and unknown claims against them. Further, defendants asserted that if the agreement did not cover claims unknown to Belanger and Marvin, they should have known about the claims in the present lawsuit because the agreement contemplated removal of their mobile homes. At the conclusion of testimony, the trial court held that the settlement agreement's terms were not ambiguous nor susceptible to the interpretation proffered by defendants. However, the trial court allowed defendants to present evidence to a jury that Belanger or Marvin had abandoned their personal belongings at the time of removal and permitted defendants to argue that they did not sustain damages because the mobile homes were empty.

After the second phase of the trial, the jury returned a verdict in favor of Belanger and Marvin for each of their causes of action for conversion, breach of contract, fraudulent conveyance, and breach of the implied covenant of good faith and fair dealing. The jury awarded Belanger $84,000 for past economic damages, $208,000 for past noneconomic loss, and $185,000 for future

noneconomic loss, totaling $477,000. The jury awarded Marvin $52,000 for past economic damages, $220,000 for past noneconomic loss, and $196,000 for future noneconomic loss, totaling $468,000.[6] The jury found that Biggs acted with malice, oppression, or fraud and imputed that conduct to Biggs Realty and the LLC defendants.

V.      The jury awards punitive damages.

During the punitive damages phase, Biggs testified as to his financial condition. Biggs's real estate holdings generated $10,860,208 in annual rental income and he had a net worth of $81,529,893. The fair market value of his assets totaled $148,730,672.

Biggs also described the structure of Biggs Realty and the LLC defendants. Biggs Realty ran and was the managing member of all the LLC defendants. Biggs was the president of Biggs Realty which he co-owned with his wife. Biggs combined the funds for the LLC defendants in one bank account. He also interchanged his name and those of the LLC defendants when conducting business, which all shared his home office. Biggs's companies did not have employees and he made all of the decisions for each of them.

The jury awarded Belanger and Marvin $4 million in punitive damages each. The trial court entered judgment in favor of Belanger and Marvin, awarding them $4,477,000 and $4,468,000 respectively and against defendants, jointly and

---

[6] While the jury returned a verdict against defendants for actual fraudulent conveyance, Belanger and Marvin did not seek, nor did the jury award, any damages for the fraudulent conveyance cause of action.

9

severally. The trial court denied defendants' motions for a new trial and for judgment notwithstanding the verdict.

VI. The trial court awards Belanger and Marvin their attorney fees.

Belanger and Marvin requested attorney fees pursuant to the terms of the settlement agreement in the amount of $1,790,984. The trial court ruled that they were entitled to attorney fees on their contract claims only. The trial court reduced plaintiffs' counsel's hours by 500 hours and deducted $50,000 from the fees requested because plaintiffs' counsel spent those hours on the tort claim unrelated to the breach of contract causes of action. The trial court awarded them $1,487,990.30 in fees.

Defendants appealed. Biggs and Biggs Realty appealed separately from the LLC defendants. We consolidated the appeals and allowed Belanger and Marvin to file a consolidated respondents' brief.

## DISCUSSION

I. Defendants were not entitled to an offset from the settlement award in the prior action.

Defendants' first contention is that trial court erroneously instructed the jury that there could be no offset for any portion of the $1.4 million settlement paid in the prior action to the five park residents. Defendants challenge the instruction itself and then argue that the jury's awards of past economic damages for personal property were not supported by substantial evidence.

We review jury instructions de novo. (*Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 845.) "A judgment may not be reversed on appeal, even for error

10

involving 'misdirection of the jury,' unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' [Citation.] When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Id.* at p. 572.)

The challenged instruction reads: "You have heard evidence and argument that Plaintiffs were compensated for the physical damage caused to their mobile homes and the loss of use as a result of a landslide in a 2011 Settlement Agreement. Plaintiffs were not compensated in the 2011 Settlement Agreement for the harms they alleged here. You must not consider the prior settlement amount in determining whether to award Plaintiffs damages." Defendants assert that this instruction was erroneous because it may have allowed Belanger and Marvin a double recovery if they had been compensated for damage to their mobile homes and personal property caused by the landslide.

A plaintiff "is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158–1159.) This principle is not applicable here. Even if Biggs compensated Belanger and Marvin for personal property that

11

was damaged by the landslide through the settlement agreement, that did not then confer the right to destroy or convert that property that had been replaced or repaired, which Belanger and Marvin claimed to have done after the landslide. The harms are therefore distinct and not duplicative. Defendants could claim an offset only if there was evidence that Belanger and Marvin were requesting damages that were at least in part the same damages that they were compensated for by the settlement in the prior action.[7] That was not the case here, therefore, the instruction was correct.

II. The past economic and future noneconomic damages are appropriate.

A. *The past economic damages awards are supported by substantial evidence.*

Defendants assert that the jury's past economic damages awards to Belanger for $84,000 and to Marvin for $52,000 were not supported by substantial evidence. Specifically, defendants argue that these amounts are inconsistent with Belanger's and Marvin's appraiser who set the total value for Belanger's two mobile homes at $54,000 and Marvin's mobile home at $27,000. In other words, the jury awarded Belanger $30,000 more and Marvin $25,000 more than the value of the mobile homes as attested to by plaintiffs' own expert.

---

[7] Moreover, defendants' citations to Belanger's testimony in the prior action regarding damage to her mobile home supports the conclusion that the mobile home itself was damaged, but not necessarily any personal property inside.

This argument is meritless.  Belanger and Marvin offered testimony regarding the contents of their mobile homes, including pieces of furniture, fixtures, and other personal items that remained in the mobile homes when defendants converted them.  Nonetheless, defendants argue that this evidence cannot support the verdict because Belanger and Marvin had already been compensated for this loss by the settlement agreement in the prior action.  However, as discussed above, the damage to the personal property from the landslide was distinct from the harm caused by Biggs when he converted the mobile homes before allowing Belanger and Marvin an opportunity to remove their belongings.  We also reject defendants' position that the property was rendered valueless by the trial court's preliminary injunction enjoining Biggs from evicting park residents in the prior action.  Defendants were afforded the opportunity to argue that the personal property that was abandoned was valueless or worth considerably less than what Belanger and Marvin claimed, but that theory was rejected by the jury.

Accordingly, the damages awarded to Belanger and Marvin were supported by substantial evidence.

B. *The future noneconomic damages awards were legally proper and supported by substantial evidence.*

Defendants next argue that the jury's award of future noneconomic damages is both factually unsupported by the record and deficient as a matter of law.  They contend that the jury's awards of $185,000 and $196,000 for Belanger and Marvin respectively are based on speculative injuries and are thus not recoverable as a matter of law.

"Noneconomic damages compensate an injured plaintiff for nonpecuniary injuries, including pain and suffering.  Pain and

13

suffering is a unitary concept that encompasses physical pain and various forms of mental anguish and emotional distress. [Citation.] Such injuries are subjective, and the determination of the amount of damages by the trier of fact is equally subjective. [Citation.] There is no fixed standard to determine the amount of noneconomic damages. Instead, the determination is committed to the discretion of the trier of fact." (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1332, fn. omitted.) A "plaintiff may recover not only for physical pain but for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892–893.)

Speculative damages are not compensable. (*Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1048.) "To recover future damages, a plaintiff must prove that his or her detriment is reasonably certain to result in the future." (*Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 460.) Expert testimony is "unnecessary if the injury is such that the jury could conclude, based on all the evidence and relying upon its own experiences and common knowledge, that the future harm is reasonably certain to occur." (*Ibid.*)

Defendants claim that Belanger's and Marvin's future injuries are inherently speculative because they are based on the subjective belief that they will suffer physical, psychological, and emotional symptoms as a result of the stress and anxiety they will experience in their future dealings with Biggs. By way of example, defendants state that, if Biggs were to sell the park, Belanger's and Marvin's purported fears would have zero substance. This argument and example ignore the fact that the future noneconomic damages were also based on Belanger's and

14

Marvin's strong emotional attachment to their homes and their plans to use them during retirement or to care for their families. Belanger testified that she continued to suffer emotional distress, pain and suffering caused by the loss of her mobile home. Belanger said, "I loved my home, and [Biggs] took it from me. And it's tough. You know, it was my retirement home. I worked hard to keep it that way. It's emotional." The same type of loss applies to Marvin, who testified that she continues to suffer emotional and physical distress from Biggs's conduct, including sleep issues, headaches, an ulcer, and depression. Marvin said, "I had anxiety and stress and then fear set in because I have a child now. And how am I going to provide for that child for the future. He was 13." Thus, the future noneconomic damages awards were based on more than Belanger's and Marvin's speculative fear of future interactions with Biggs.

Defendants next assert that future emotional distress damages are unavailable in connection with property losses as opposed to injuries to the person. While it is settled that a plaintiff may recover for past mental anguish resulting from destruction of property (*Acadia, California, Ltd. v. Herbert* (1960) 54 Cal.2d 328, 337; *Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 477), neither party has cited to a case where a plaintiff expressly recovered for future emotional distress based on damage to property. Defendants cite to the relevant jury instruction for conversion, CACI No. 2102, which states a plaintiff's right to recover emotional distress in the past tense: "Emotional distress suffered by [name of plaintiff] as a result of [name of defendant]'s conduct." (Boldface and Italics omitted.) However, " '[j]ury instructions, whether published or not, are not themselves the law, and are not authority to establish legal

15

propositions or precedent.  They should not be cited as authority for legal principles.' " (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1049.)

In the absence of any other authority, we agree with Belanger and Marvin that they have suffered and will continue to suffer emotional distress from the loss of their mobile homes and that the jury found this loss compensable.  When reviewing a damages award, we "must determine every conflict in the evidence in respondent's favor, and must give him the benefit of every inference reasonably to be drawn from the record."  (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508.)

III.    The punitive damages awards were appropriate.

Defendants next argue that the punitive damages awards must be reversed because they are excessive as a matter of law and violate due process.

In determining the constitutional maximum for a punitive damage award, courts follow three guideposts:  "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." (*State Farm Mut. Ins. v. Campbell* (2003) 538 U.S. 408, 418.)  Our review of the award is de novo.  (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1172.)  We make an independent assessment of the reprehensibility of defendants' conduct, the relationship between the awards and the harm done to the plaintiffs, and the relationship between the award and civil penalties authorized for comparable conduct.  (*Ibid.*)  However,

16

"findings of historical fact made in the trial court are still entitled to the ordinary measure of appellate deference." (*Ibid*.)

A. *Defendants' conduct was highly reprehensible.*

The " 'most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' " (*State Farm Mut. Ins.*, *supra*, 538 U.S. at p. 419.) "On this question, the high courts instructed courts to consider whether '[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.' " (*Roby v. McKesson Corp*. (2009) 47 Cal.4th 686, 713.)

Nearly every reprehensibility factor is present here and well supported by the evidence. Belanger and Marvin presented evidence that the defendants' conversion of their mobile homes caused them substantial emotional distress. Harm to a person's emotional and mental health qualifies as physical harm. (*Roby v. McKesson Corp.*, *supra*, 47 Cal.4th at p. 713.) In turn, defendants' conduct of removing and then permanently depriving Belanger and Marvin of their mobile homes showed a reckless disregard for their emotional health. Notwithstanding the fraudulent manner of defendants' conduct, it is objectively reasonable that the permanent loss of a person's home would negatively impact his or her emotional wellbeing. Belanger and Marvin were also in a financially vulnerable position with respect to Biggs. Unlike other homeowners who own the land beneath their houses, Belanger and Marvin rented space in the park

17

where their mobile homes sat. As defendants admit in their briefs, Biggs could sell the land at any time and Belanger and Marvin would have no recourse. While Belanger and Marvin had the right to reestablish their leaseholds, Biggs did not have to fix the land around their mobile homes and thus HCD's order to vacate could remain in effect indefinitely. It is also indisputable that defendants' behavior was not an isolated incident. Biggs admitted to lying to Belanger and Marvin over time so they would consent to the removal of their mobile homes. Further, once the mobile homes were removed, defendants took the extra step of selling the mobile homes through deceit. These actions were willful. Biggs knew the settlement agreement did not grant him ownership of the mobile homes or authorize him to permanently deprive Belanger and Marvin of them. Yet, Biggs contracted for their demolition and removal without Belanger's or Marvin's consent. He also knew that Belanger and Marvin claimed to have property in the mobile homes that they wished to remove before Biggs took any action. Lastly, Biggs never told Belanger or Marvin that he planned to remove their mobile homes or the property within before he did so. They only discovered his misconduct by chance. These facts show a high degree of reprehensibility.

B. *The disparity between the actual harm and the punitive damages award did not violate due process.*

Due process "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." (*State Farm Mut. Ins.*, *supra*, 538 U.S. at p. 416.) Few "awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." (*Id.* at p. 425.)

18

The jury awarded Belanger $477,000 in compensatory damages and $4 million in punitive damages, a ratio of 8.39 to 1, and awarded Marvin $468,000 in compensatory damages and $4 million in punitive damages, a ratio of 8.55 to 1. Both of these are single-digit ratios. Nonetheless, defendants argue for a lesser ratio because the compensatory damages were substantial and damages for emotional distress comprised a significant portion of the awards.

Defendants cite *Walker v. Farmers Ins. Exchange* (2007) 153 Cal.App.4th 965 to support their argument that a punitive damages award should be reduced when accompanied by a large noneconomic damage award that is punitive in nature. In *Walker*, the court affirmed a reduction of a punitive damages award from $8.3 million to $1.5 million when the jury also awarded $1.5 million in emotional distress damages. (*Id.* at pp. 973–975.) However, *Walker* is distinguishable. The only reprehensibility factor was plaintiffs' financial vulnerability and the misconduct was the result of an oversight and an isolated incident. (*Id.* at p. 973.) As stated above, Marvin and Belanger suffered both pecuniary harm and physical harm in the form of emotional distress from the loss of their homes and personal property, which was the direct result of defendants' repeated misconduct and continued reckless disregard for Belanger's and Marvin's wellbeing.

Therefore, the noneconomic damages awards were not punitive in nature, as they were supported by evidence of

19

Belanger's and Marvin's emotional and mental harm. The multipliers were not unconstitutionally high under these facts.[8]

IV.     Defendants did not fraudulently convey the park.

Defendants argue that Belanger's and Marvin's claim for fraudulent conveyance fails as a matter of law because they failed to show any harm. We agree.

" 'A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.' " (*Kerkeby v. Superior Court* (2004) 33 Cal.4th 642, 648.) "A well-established principle of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential.' " (*Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80.)

Belanger's and Marvin's theory of injury caused by the fraudulent conveyance was that Biggs's transfer of ownership of the park from the NV LLC to the DE LLC temporarily put the park beyond their reach through an entity then unknown to them, and permanently made it more difficult for them to use the park to collect what they were owed. However, the trial court had jurisdiction over all the LLC defendants throughout the case and each of them has been available to satisfy any judgment

---

[8] The parties' briefs do not address the third guidepost—the difference between the punitive damages awarded by the jury and civil penalties authorized in other cases—therefore we do not discuss it here.

20

resulting from the transfer of the park. Thus, Belanger and Marvin failed to show prejudice from the transfer of the park.

We disagree, however, with defendants' assertion that reversing the judgment on the fraudulent conveyance cause of action should result in a new trial on all issues related to the punitive damages liability and other damages claims. The record shows that Belanger and Marvin did not seek damages with respect to their fraudulent transfer claim. Rather, they sought, and the trial court granted, only an injunction against further transfers. This does not support defendants' contention that the fraudulent transfer cause of action affected the findings of malice, fraud, and oppression because, as discussed above, there was more than ample conduct for the jury to draw from to conclude that defendants acted with malice, fraud, and oppression to trigger punitive damage liability.

V.     Plaintiffs were entitled to a portion of their attorney fees.

Defendants argue that the trial court erred in concluding that plaintiffs were entitled to $1,487,990.30 in attorney fees. Defendants assert that the plaintiffs were required to elect between tort remedies of emotional distress and punitive damages or contract remedies of attorney fees under the settlement agreement's fee clause.

We review an award of attorney fees for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) To the extent the issue turns on the interpretation of a contract and the trial court's authority to award attorney fees, our review is de novo. (*Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1273.)

The attorney fees provision in the settlement provided, "the prevailing party shall be entitled to recover reasonable attorney's

21

fees and expenses incurred in enforcing the Agreement." Thus, the plain language of the agreement limits attorney fees to the time spent pursuing those causes of action that arise from enforcement of the agreement, not those grounded in tort. (See *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 709.) Belanger and Marvin assert that we should affirm the trial court's award of attorney fees because it properly apportioned the fees between their contract and tort causes of action and excluded fees related to the torts. When a plaintiff prosecutes both breach of contract and tort claims, the plaintiff may recover fees under a contract containing a fee provision for work performed on the contract claims. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.)

Defendants disagree and argue that, based on the doctrine of election of remedies, Belanger and Marvin were required to choose between their attorney fees generally or recovery of their emotional distress and punitive damages awards. "Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. . . . Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment. [Citations.] However, if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other." (*Roam v. Koop* (1974) 41 Cal.App.3d 1035, 1039.) "Courts and commentators have long recognized the harshness of the election of remedies doctrine and have for some time looked upon it with disfavor. [Citations.] To mitigate the doctrine's effects, courts over the years have devised

22

various ways of narrowing its application." (*Baker v. Superior Court* (1983) 150 Cal.App.3d 140, 145.)

The doctrine does not apply because Belanger and Marvin did not seek inconsistent remedies for causes of action based on the same set of facts. (See *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 137.) Here, while there is some overlap in the facts underlying the contract and tort causes of action, Belanger's and Marvin's theories of tort included additional facts such as Biggs's misrepresentations, his subsequent sale of the mobile homes to third parties, and his deception. Moreover, the remedies sought were not inconsistent because Belanger and Marvin pursued separate causes of action under separate theories of recovery. (See *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1170.)

Defendants rely on *Perry v. Robertson* (1988) 201 Cal.App.3d 333 and *Fairchild v. Park* (2001) 90 Cal.App.4th 919 to argue that Belanger and Marvin were required to elect between their punitive damages awards or pursuing attorney fees under the settlement agreement. Neither case supports this contention.

In *Perry v. Robertson*, *supra*, 201 Cal.App.3d at page 335, the plaintiff sued her real estate broker claiming the broker negligently drafted the written sales agreement for the sale of her home. The contract with the broker included an attorney fees provision. (*Ibid.*) However, the plaintiff's complaint only alleged a single cause of action for negligence. (*Id.* at p. 336.) The plaintiff prevailed on her cause of action for negligence at trial, which also necessarily proved a breach of the parties' contract, and the court awarded her attorney fees. (*Id.* at p. 337.) The

23

defendant argued that the plaintiff could not collect her attorney fees because the lawsuit sounded in tort and was not an action on the contract. (*Ibid.*) *Perry* considered whether the complaint's single cause of action for negligence encompassed a cause of action for breach of contract, and whether plaintiff elected a consistent remedy to recover damages under a contract theory. (*Id.* at p. 338.) *Perry* affirmed the attorney fees award, holding "when the prevailing plaintiff in such an action has not elected a distinctive *remedy* in tort, such an action may be, and here is, 'on a contract.' " (*Id.* at p. 344.) Unlike the plaintiff in *Perry*, Marvin and Belanger alleged and prevailed on multiple causes of action for torts and breach of the settlement agreement that were based on distinct facts. Thus, we do not find *Perry* applicable.

In *Fairchild v. Park*, *supra*, 90 Cal.App.4th at page 922, tenants sued their landlord for breach of contract, breach of the implied warranty of habitability, negligence, and fraud. Before trial, the trial court dismissed the tenants' fraud claim and barred all tort relief on the claim for breach of the warranty of habitability. (*Ibid.*) Thus, the only remaining claims were those for breach of contract and breach of the implied warranty of habitability, which the trial court noted could sound in contract or tort. (*Ibid.*) The *Fairchild* plaintiffs prevailed on their contract causes of action only and thus it does not support defendants' argument here where plaintiffs prevailed on both contract and tort causes of action.

VI.   The punitive damages awards against the LLC defendants were appropriate.

Lastly, the LLC defendants argue that the punitive damages judgment against each of them must be reversed because plaintiffs only offered evidence of Biggs's financial

24

condition, but not the individual financial conditions of the LLC defendants.

"Evidence of a defendant's financial condition is a legal precondition to the award of punitive damages. [Citation.] We examine the record to determine whether the challenged award rests upon substantial evidence. [Citations.] If it does not, and if the plaintiffs had a full and fair opportunity to make the requisite showing, the proper remedy is to reverse the award." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 195.)

Plaintiffs concede that they did not present evidence of the financial condition of each of the LLC defendants. Rather, plaintiffs argue that the LLC defendants agreed to verdict forms and jury instructions that allowed the jury to award punitive damages jointly and severally against all defendants and that the evidence of Biggs's financial condition alone was enough to satisfy their burden of proof.

The LLC defendants assert that they submitted a special verdict form, but the trial court chose a general verdict form instead and thus they did not agree to a joint and several punitive damage verdict form. This contention is not supported by the record. The LLC defendants cite to a portion of the reporter's transcript where the trial court proposed a general verdict form with special questions rather than the special verdict forms submitted by the parties' counsel. They have not cited to any portion of the record that shows that they disagreed with the trial court's proposal or if there was any further discussion on the issue. "It is incumbent upon counsel to propose a special verdict that does not mislead a jury into bringing in an improper special verdict." (*Myers Building Industries, Ltd. v.*

25

*Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960, fn. 8.) Therefore, this issue was forfeited.

However, even if the issue was not forfeited, Belanger and Marvin supplied ample evidence of Biggs's financial condition and how he exercised exclusive authority over the LLC defendants such that there was no meaningful separation between them. For example, Biggs treated the LLC defendants as interchangeable and commingled assets. He used one bank account, combining the funds of the LLC defendants and each of them shared Biggs's home office. Biggs was the president of Biggs Realty which was the managing member of all the LLC defendants.[9] Biggs also interchanged his name and that of the LLC defendants when conducting business.

Biggs's financial condition alone supported the punitive damages award, and there was no meaningful separation between Biggs and the LLC defendants. Therefore, the joint and several punitive damages award against the LLC defendants was appropriate even without evidence of each of their individual financial conditions. (See *Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 268.)

---

[9] Biggs owns 50 percent of Biggs Realty with his wife Loretta Biggs.

## DISPOSITION

The judgment is reversed with respect to the cause of action for fraudulent conveyance only and affirmed in all other respects.  Nancy Belanger and Gaelyn Marvin are awarded their costs on appeal.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


EGERTON, J.